## No. 11,890.

THE STATE OF LOUISIANA VS. L. O. DESFORGES, THOMAS HALEY AND PETER B. CAULFIELD.

In this State it is an indictable act to propose to receive a bribe by any parochial or municipal officer.

Letters from an officer to his employer communicating facts bearing upon the issue before the court, relating to the employer's interest, being an incident of the business and contemporaneous, are admissible as part of the *res gestæ*.

A contradicted witness may be corroborated (as to some matter material to the issue); although the one against whom he testified declared that in introducing contradicting evidence it was not the intention to impute fraud, fabrication, or in any manner to impeach him, the fact was that the repeated contradictions were of an impeaching character.

One " has the unquestioned right to introduce evidence in corroboration of a witness who has been impeached or *contradicted*."

APPEAL from the Criminal District Court for the Parish of Orleans.  *Moise, J.*

*M. J. Cunningham*, Attorney General, *Charles A. Butler*, District Attorney, *John J. Finney*, Assistant District Attorney (*Lionel Adams*, of Counsel), for Plaintiff, Appellee.

*Evans & Dunn*, *James C. Walker* and *A. D. Henriques* for Haley and Caulfield, Defendants, Appellants.

Argued and submitted December 7, 1895.
Opinion handed down December 16, 1895.
Rehearing refused January 20, 1896.

The opinion of the court was delivered by

BREAUX, J.  The defendants were indicted for proposing, as councilmen, to receive a bribe.  Thomas Haley and Peter B. Caulfield were tried and convicted.

During the trial the court allowed the State to introduce in evidence two letters, also permitted the State to introduce witnesses to prove the general reputation of a witness for truth and veracity.

The witness, whose letters were introduced, was an officer of the Louisville & Nashville Railroad Company, who had sought by these

letters pending negotiations to inform his employer of the conditions under which a grant or switch track privileges on the levee could be obtained by his company from the Council.

From one of the letters we extract:

"The factions have made a kind of combine on our business and demand seven thousand five hundred dollars for the passage of the ordinance. I have told the members that I could not make any deal with them contrary to law and good morals, whereupon they tell me that they will withhold my ordinance until I think of it."

The objection *inter alia* was that the witness' narrative or description of what had taken place between himself and factions or parties not named and in no manner connecting either of the witnesses was not admissible.

The defendants made a motion to quash the indictment and after conviction another in arrest of judgment on the ground that Act 59 of 1878, in so far as it relates to the crime of bribery, was repealed by Act 78 of 1890.

First in order is the bill of exceptions to the overruling of these two motions.

The act invoked by the defendant as covering the whole subject and repealing prior laws is entitled an act "to define the crime of bribery and provide penalties therefor."

The contention is that the word "define" as used in the title means to set bounds to and mark the limit of bribery in this State; that proposing to receive a bribe falls within the common law definition of bribery; that thus limited by the title it can not be supposed that the Legislature in enacting Act 78 of 1890 intended to leave unrepealed any part of the prior enactment embracing the same subject matter.

In support of this proposition the case of James Walsh vs. The People, 65 Illinois, 58-62, is cited. The defendant, an alderman of the city of Chicago, was indicted for a proposal made by himself to receive a bribe. The ground was in defence that the statute had not created the offence, and that the act charged did not fall within any of the common law definitions of bribery.

The court decided that the act of proposing to receive a bribe is within the common law definition of bribery and announced as reason for the conclusion that the mere offer to bribe, though it may be rejected, is an offence, and the party who makes the offer is answer-

able to indictment and punishment; that the distinction between an offer to bribe any one and a proposal to receive a bribe is exceedingly nice; the difference wholly ideal; that in holding that the act charged was indictable the court was not drifting into judicial legislation, but merely applying old and well settled principles to a new state of facts and held as we have already stated.

If we should follow the construction announced in that decision, the Act 78 of 1890 denouncing bribery would include the offer to accept a bribe, and a prosecution for offering to receive a bribe, based on the last act, would be valid without reference to the prior statute.

But it is argued on the part of the defendants that the words " or parochial and municipal officers who shall propose to receive a bribe," contained in Sec. 3 of Act 59 of 1876, having been omitted the only inference to be drawn from such a course of legislation is that a change in the law was intended to be made.

We do not think that this would unavoidably follow; particularly if " bribery " can be extended to include the offer to receive a bribe. In that case there would be no omission; if the word used covered both offences the same end would be accomplished by the word " bribery; " if it be as announced in the decision just cited, a different expression for the one idea of " bribery."

Be this as it may, our reading has not resulted in our finding that the offer to receive a bribe is an offence at common law.

Sir William Blackstone, in his Commentaries on the Laws of England, referring to bribery as an offence against public justice, adverts to the important part which presents play in the social life of the East; where it is the custom never to petition any superior for justice, not excepting their kings, without a present. This, he adds, is calculated for the genius of despotic countries where the true principles of government are never understood, and it is imagined that there is no obligation from the superior to the inferior; no relative duty from the government to the governed. His transition from the custom in the East of offering presents to the Roman law in regard to bribery is somewhat sudden, followed by an allusion to Plato, who " more wisely in his ideal republic orders those who take presents for doing their duty to be punished in the severest manner," and closes his comments upon this subject with reference to England, where the " offence of taking bribes is punished in inferior officers with fine and imprisonm nt, and in those who offer a bribe, though not taken, the same.'

In all his comments in regard to that vice as prevailing in ancient or modern times, no mention is made of such an offence as the offering to receive a bribe, though much is written about bribery and the offer to bribe.

By an examination as thorough as we could make, we have not, in any English commentator's work upon that subject, found any reference to the one who merely proposed to receive the bribe as an offender of the common law.

The act of actually receiving was necessary to constitute the offence. While it is clearly announced as law, that it is as much a crime to offer a bribe as to take one, it never extends to the *offer to* accept a bribe; never by inference, as was inferred in the Illinois case *supra*.

In Louisiana, prior to the statute of 1878, the act of offering to receive a bribe was never, in terms, denounced.

Section 61 of Act 130 of 1805 denounced bribes or reward to influence behavior in office. The last act preceding the statute of 1878 is equally as limited in its terms—i. e., Act of 1873, No. 40. The act of 1878 denounced as a separate and distinct offence "parochial or municipal officers who shall propose to receive a bribe.

The act of 1890 is silent in regard to this offence. Whatever construction is placed upon this omission in the last act, the offence in our view is denounced.

The two enactments do not embrace the same subject, nor does the limit which the words "to define" place upon the object of the last enactment operate by implication as a repeal of another and substantive offence created by the prior act. Moreover, the last act is not an amendment or re-enactment of the prior law; therefore the principle of interpretation, that the parts of the former law left out are repealed, does not apply. The repeal can not be inferred when, as in this case, the two statutes, except as relates to bribery, can be harmonized.

The prior law, it must be held, in so far as relates to bribery itself, is repealed; but it is not repealed in so far as relates to the offer to receive a bribe.

"One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose. When there is a difference in the whole purview of two statutes apparently relating to the same subject, the former is not repealed." Sutherland, Sec. 138.

The next objection was raised to the admissibility of two letters; admitted by the court as part of the *res gestæ;* written by the principal witness for the prosecution to his employer; they communicated to the latter, proposals and the circumstances under which they were made; the negotiations related to a resolution in the company's interests before the City Council and the communications bear dates contemporaneous with the offences charged. The trial judge, in support of his ruling, stated: "This evidence was part of the *res gestæ.* Mr. Marshall was merely an employee of the Louisville & Nashville Railroad Company, and had necessarily to communicate the propositions to receive a bribe. It was the company, and not he, that had to pay the bribe if the proposal was assented to; hence it was really made to the company through him. *The defendants were fully aware* of this fact. Marshall told the three accused that he ' had no authority to spend any money for the company' (see his testimony, Question and Answer No. 83); on another occasion he informed Caulfield that he was still undecided as to what the company would do about the bribe" (Marshall's testimony, Answer No. 62). The " defendants, therefore, knew at the time that their propositions were conveyed to the headquarters of the coroporation." ·

The communications were the accompaniment of the act; "were so connected with it as to illustrate its character." 1 Greenl. on Ev., Sec. 108; Wharton Cr. Ev., Sec. 263.

Another objection, based upon grounds stated in a separate bill of exceptions, was to the admissibility of the testimony of witnesses in support of the testimony of the State's principal witness. The grounds were that the defence had not imputed fraud or fabrication to the witness, Charles Marshall; that on the contrary the contention was that he was mistaken and had mistaken these defendants in the conversations that he had with others with whom he had conversations.

Such were the statements to the court by counsel for defendants. None the less the testimony of the witnesses for the defendants sought to impeach the testimony of this witness—it could have no other effect; there was an irreconcilable conflict in the relation of facts between this witness and those for the defendants. There was direct, open contradiction in several important particulars. Mr. Rapalge (Sec. 217) says: "A party has the unquestioned

right to introduce evidence in corroboration of a witness who has been impeached or *contradicted*. And no exception lies to "the admission of such evidence." A contradicted witness, in regard to facts material to the issue, may be corroborated.

After a careful examination of the law of the case we have not found any reversible error.

It is therefore adjudged and decreed that the judgment be affirmed.

### ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by

WATKINS, J.    The defendants claim a rehearing upon one ground only, to-wit:

"The petition of Thomas Haley and Peter B. Caulfield, defendants in this cause, with respect, ask the court for a rehearing on the ground that they are advised the court erred in holding that where there is a direct contradiction in regard to facts material to the issue, between a witness for the prosecution and witnesses for the defendants, the State may call witnesses to prove the general reputation for truth and veracity of its witness."

And counsel claim that our opinion, in this respect, is at variance with the principles of the common law; and that our statute provides, amongst other things, that "the rules of evidence    *    *    * shall be according to the common law." R. S., Sec. 970.

More generally speaking, counsel's proposition is that, "a direct contradiction" between two witnesses, "in regard to facts material to the issue—said witnesses having testified for different sides of the controversy—does not authorize the introduction of testimony to sustain either by proof or character; and counsel complains that, over timely objection, the prosecution was allowed to call and examine eleven witnesses, "not to corroborate Mr. Marshall, but to sustain him by proof of character."

Counsel say in their brief:

"We contend that it was error to allow witnesses to be called to sustain Mr. Marshall's general character for truth, before his general character in that, or any other respect, had in any sort been put in issue.

"In other and plainer words, we contend that under the *English common law rules of evidence* a contradicted witness, in regard

to facts material to the issue, can not be sustained by evidence of his general good character."

Counsel cite, in support of their objection, the following cases, viz.: Starks vs. The People, 5 Denio (N. Y.), 108; The People vs. Hulse, 3 Hill (N. Y.), 313; Harris vs. State, 30 Ind. 131.

All other cases to which counsel make reference are civil suits, the trial of which, in different jurisdictions, mainly depend upon local statutes, and not on the common law.

Counsel have, also, brought forward extracts from several text writers, and we reproduce them, viz.:

"The rule governing the introduction of *sustaining* testimony of this kind is stated as follows in 3 Starkie, Ev., par. 1757: 'And in all cases where the credit of a witness has been attacked, whether by general evidence or by particular questions on cross-examination, it seems that the party who called him is at liberty to support his testimony by general evidence of good character.'

"So, if the character of the attesting witness to a deed or will be impeached on the ground of fraud, evidence of his general good character is admissible.

"But the mere *contrariety* between the testimonies of *adverse witnesses*, without any *direct imputation of fraud* on the part of either, *supplies no ground* for admitting *general* evidence as to character. To the same effect is the rule as stated by Mr. Greenleaf in his work on Evidence, Vol. 1, par. 469. * * * 'The rule thus laid down is well supported by the citation of decided cases. * * * But when the character of the testimony given by a witness is attacked only by showing its improbability, *or by other testimony conflicting with the testimony of the* witness, *sustaining* testimony *can not* be admitted. If admitted when there is only a *conflict in the testimony of opposing* witnesses, the opposing witnesses on both sides could be supported by sustaining testimony in regard to their standing and character by reputation as witnesses, and *the trial would be prolonged indefinitely.*' * * *

"Russell on Crimes, Vol. 3, 9th Ed., pp. 564, 565, says:

"'A party can not bring evidence to confirm the character of a witness before the credit of that witness has been impeached, either upon cross-examination or by the testimony of other witnesses. Thus, in a case where a witness for one party asserts one thing, and a witness for the other party asserts the contrary, and direct fraud

is not imputed to either, evidence of the good character of either witness is not admissible."

"On page 565, 3d Vol., Russell on Cr., the author says: 'The better opinion seems to be that such evidence is not admissible, except in cases where the counsel on the other side impute a design to misrepresent from some motive of interest or relationship,' etc.

"Taylor on Ev., Vol. 2, p. 1262, says:

"'But mere contradiction among witnesses examined in court supplies no ground for admitting general evidence as to their character,'" etc.

Counsel quotes from the ruling of the trial judge the following exception, viz.:

"The trial judge says (R. 137): 'The two defendants, Haley and Caulfield, taking the stand in their own behalf, denied and contradicted the statement as to any conversations or negotiations relating to the payment of a bribe as a consideration for the passage of the ordinance, but generally admitted the meetings. This narrowed the issue before the jury to a question of veracity between the parties.'"

In our opinion we said, that, notwithstanding the insistence of defendant's counsel, that there had not been imputed to the State's witness, Charles Marshall, any fraud or recent fabrication, and that their contention was that he was under misapprehension as to the defendant's statements to him, "none the less, the testimony of the witnesses for the defendants sought to impeach the testimony of this witness. It could have no other effect; there was an irreconcilable conflict in the relation of facts between this witness and those of the defendants. There was, at least, direct, open contradiction in several important particulars."

The court did not appear to have viewed the testimony *pro* and *con* as a "mere contradiction among the witnesses;" on the contrary, that the witness, Marshall, affirmed certain "conversations or negotiations" between the defendants and himself relative to a proposed bribe, and the defendants denied such "conversations or negotiations" altogether and *in toto*. The necessary result of this evidence was a simple question of veracity for the jury to determine. Whose testimony was more veracious and worthy of belief?

By the emphatic denials defendants had made, the credit of Marshall had been *indirectly* attacked. Not by simply showing its improbability by the relation of circumstances and facts at variance

with his statements, but by an emphatic denial of his statements altogether.

It seems most reasonable that, in this situation, the State should be permitted to sustain her witness' credibility. If not within the letter such testimony clearly comes within the reason and spirit of the rule announced in the authority cited *supra*.

Greenleaf states a qualification to the general rule in these words, viz.:

" Where evidence of *contradictory statement* by a witness, or of other particular facts, is offered *by way of impeaching his veracity*, his general character for truth being *thus in some sort put in issue*, it has been deemed reasonable to admit *general evidence* that he is a man of strict integrity and scrupulous regard for truth." 1 Greenleaf, Sec. 469.

That rule was cited approvingly by this court in State vs. Boyd, 38 An. 374.

Though defendants do not confess, but on the contrary disavow that such was their object in offering the testimony under consideration, yet we feel authorized to treat it as having that effect; and having that effect, general evidence of the veracity and integrity of Marshall was admissible.

State vs. Fruge, 44 An. 165, supports that view; but quite a different state of facts is presented in State vs. Cady, 46 An. 1346.

The contention insisted on is not borne out by the authorities.

Rehearing refused.