(118 So. 73)

**STATE v. RIALS.**

July 2, 1928.

Rehearing Denied July 20, 1928.

[1] Ante, p. 883.

L. Austin Fontenot, of Opelousas, for appellant.

Percy Saint, Atty. Gen., R. Lee Garland, Dist. Atty., of Opelousas, and E. R. Schowalter, Asst. Atty. Gen., for the State.

THOMPSON, J. The defendant was tried for murder, convicted of manslaughter, and sentenced to the penitentiary for not less than 12 nor more than 20 years.

He complained, in four bills of exception, of errors committed to his prejudice by the rulings of the trial judge, but in this court the first bill has been expressly abandoned in both oral argument and brief.

We have carefully examined the other three bills, and find no prejudicial or reversible error in any of them. We shall, however, discuss them as briefly as possible, with due appreciation of the earnestness with which they are presented by zealous counsel for defendant.

Defendant, under his general plea of not guilty, contended that he had killed the deceased in self-defense, and as a further excuse, or in mitigation of the homicide, he pleaded the existence of an illicit relation or intimacy between his wife and the deceased.

In the statement, however, made by the trial judge under Act 222 of 1926, it appears that the defendant had hidden or secreted himself in a restaurant, and when the deceased crossed the street and approached the restaurant, the defendant shot him twice with a double barrel shotgun and five times with a pistol.

In bill No. 2 it appears that, after the defense had closed its evidence, the state placed the witness L. L. Ganson on the stand and asked him if he knew what the general reputation of Mrs. Rials, the wife of the defendant, was, in the community where she lived, for truth and veracity, and as a moral and virtuous woman; which question was objected to for the reason that Mrs. Rials was not the defendant, but was only called as a witness for the state, that it was contrary to the rules of criminal evidence, and was unfair and injurious to the defendant to permit any witness' character for truth and veracity or virtue and morality to be proven up until that reputation for truth and veracity has been specifically put at issue by the defendant.

The objection as to the proof of the reputation for truth and veracity was sustained, but the state was permitted to offer evidence of the general reputation of the witness for chastity.

■■ There was obviously no error in the ruling. It is well settled that, where the character of a witness for truth and veracity has been attacked, or his testimony has been impeached, the good reputation of the witness for truth and veracity may be shown in rebuttal and in support of the testimony of such witness. State v. Boyd, 38 La. Ann. 374; State v. Fruge, 44 La. Ann. 165, 10 So. 621; State v. Desforges, 48 La. Ann. 81, 18 So. 912; State v. Pullen, 130 La. 249, 57 So. 906.

There is no good reason why the same rule should not apply where the chastity of the witness has been made the subject of attack. The defendant had offered several witnesses to prove particular acts of adultery between Mrs. Rials and the deceased. Mrs. Rials had, as a witness, denied that she had been guilty of adultery. It was permissible, in support and corroboration of her testimony, to show her general character and reputation for chastity in the community where she lived.

The counsel for defendant has discussed other questions under this bill, for instance, that the judge changed his ruling on the admissibility of testimony to prove the general reputation for truth and veracity, having first admitted such evidence, and thereafter holding that it was not admissible, and, further, that the evidence given by the witness Ganson was not in rebuttal.

It is sufficient to say that neither the bill nor the evidence attacked shows that any evidence went to the jury on the question of the general reputation of the witness for truth and veracity at any time, either before or after the final ruling sustaining the defendant's objections. As for the rest, we have already said that the evidence in support of the general reputation of Mrs. Rials for chastity was in rebuttal of the attack made on her by the defendant.

From bill No. 3 it appears that one J. W. Fortenberry, a witness for the state, was asked, by the district attorney, the following question: "Did he (deceased) intimate or suggest to you or tell you that he was in any form of trouble or dispute with anybody?"—to which the witness answered, "No." The question and answer were objected to as being hearsay. The objection was overruled, but we do not see where the defendant was prejudiced. The witness testified to other matters to which no objection was made, and no further reference was had to any statement which the deceased may have made to the witness.

The fourth and last bill was reserved under the following circumstances: A Mrs. Garaud had testified for the defendant that she had been requested by the deceased to deliver an unsigned note to the wife of the deceased, which note was produced on the trial.

In rebuttal the state placed Mrs. Fortenberry on the stand to prove that the unsigned note was not in her husband's handwriting. The defendant objected for the reason that Mrs. Garaud, who delivered the note, had not testified as to the handwriting being that of the deceased, and "that the evidence offered was in accordance with the rules of criminal evidence in so far as handwriting or proving up handwriting was concerned."

We confess that we are unable to comprehend the force or meaning of the last-named objection which we have quoted literally.

If the handwriting had not been proved or admitted, the note was not admissible in evidence for any purpose, and therefore could not be said to have been offered in accordance with the rules of criminal evidence.

We do not find anything in the note that would have any pertinent bearing on the case, either for the defendant or for the state; but be that as it may, the note having been put in evidence by the defendant for what it was worth, and defendant having proved by a witness that she was requested by the deceased to deliver the note to his wife, thereby in effect authorizing the inference that the note was the work of the deceased, it was perfectly competent for the state to prove that the note was not written by the deceased to rebut any such inference or presumption arising from the confection or delivery of the note.

But after all, the purpose of rebuttal testimony is to disprove and discredit the evidence adduced by the opposite litigant or adversary, and the matter of allowing such evidence in rebuttal is left largely to the discretion of the trial judge, and his ruling will not be disturbed except in extreme cases. State v. Blount, 124 La. 202, 50 So. 12.

The conviction and sentence are affirmed.