LAND, J.
The defendant was indicted for the murder of John C. Breeland, and was found guilty as charged. Defendant was sentenced to death, and has appealed.
. John C. Breeland, Mrs. Breeland, his wife, and Mrs. Everett, her daughter, on January 22, 1909, after dark, were murdered in. the *205 public road, near Tiekfaw, in the parish of Tangipahoa. Avery Blonnt was charged with the three murders, in separate indictments. He was tried for the murder of John O. Breeland. His defense was an alibi. He was convicted, and appealed, as above stated, and relies for the reversal of the verdict and sentence on numerous bills of exception. •
Defendant on February 4, 1909, petitioned for a change of venue, and a day was set for the hearing of .the application. Defendant at the same time moved the trial judge to recuse himself, on the ground that he had formed and expressed an opinion concerning the matter in question adverse to the defendant.
Recusation.
The motion set forth no legal cause for recusation, and was properly treated by the trial judge as frivolous. Where a motion assigns no legal grounds of recusation, it may be overruled without reference to another judge. State v. Chantlain, 42 La. Ann. 718, 7 South. 669. This court, in recently refusing the writs in State of Louisiana v. Avery Blount, In re Avery Blount Applying for Writs of Mandamus and Prohibition, No. 17,461 (no written opinion filed), tacitly approved the ruling- in the case of State v. Chantlain.
Change of Venue.
All the numerous witnesses, with one or two exceptions, testified that the defendant could get a fair and impartial trial in the parish of Tangipahoa. A jury acceptable to the prosecution and the defense was obtained without difficulty. Defendant’s application for change of venue was therefore properly overruled.
Declining to Hear Argument.
After' hearing all the evidence on the mor tion for a change of venue, the trial judge stated that he did not desire to hear argument, and overruled the motion. Subsequently the trial judge offered to hear argument, but this offer was declined by counsel for the defendant. We know of no law which compels a judge to hear an argument, if he feels competent to decide the question under consideration without such assistance. State v. Dunn, 41 La. Ann. 612, 6 South. 176; State v. Boasso, 38 La. Ann. 207. Besides, the ruling was correct, and therefore the defendant was not prejudiced.
Bill No. 6.
Defendant objected to testimony relative to the wounds received by Mrs. Breeland and Mrs. Everett, and the position in which their bodies were found at the scene of the homicide, on the ground that such testimony was irrelevant, immaterial, and illegal. The objections were overruled, and the evidence admitted by the trial judge for the following reasons:
“Because the shooting and killing of the two women and Breeland formed one continuous transaction, closely linked together, and were parts of the res gestae; and because said evidence had bearing on the question of the intent with which the killing was done, the kind of firearms and missiles used, the distance of slayer from victim as shown by the appearance and size of the wounds of all the parties killed, etc.; besides, every fact shown as to the scene of the murder, the articles found there, the nature of the wounds on the women, their position in the buggy, the baby found beside the road and near the buggy in which its mother was dead, the, tracks made in and around the road and ditch-’ es by the person committing the murder, were necessary in order to corroborate or discredit the testimony of the witnesses.”
Wharton says:
“When an extraneous crime forms k part of the res gestae, evidence of it is not excluded by the fact that it is extraneous. Thus, on a trial for murder, evidence that the prisoner, on the same day the deceased was killed, and shortly before the killing, shot a third person, was held admissible, under the circumstances of the case, notwithstanding- the evidence tended to prove a distinct felony committed by the prisoner; such shooting and killing of the deceased appearing, to be connected as parts of one entire transaction.” ' Id: -Crim: Ev. § '31.
*207 In State v. Vines et al., 34 La. Ann. 1081, where two persons were killed at the same time, and the defendants were on trial for the murder of one, exception was made to permitting a witness to narrate the whole occurrence, on the ground that the testimony would disclose the killing of the other person, which being a distinct felony was not admissible. This objection was overruled, and the ruling was sustained on appeal, the court saying, “As a general rule, all that occurs at the time and place of the killing, in homicide cases, is admissible” — citing Wharton’s Orim. Ev. § 202 et seq.; and also that proof of a different crime is admissible when both offenses are closely linked or connected, especially in the res gestae, and also when such proof is pertinent and necessary to show intent — citing State v. Mulholland, 16 La. Ann. 376; State v. Patza, 3 La. Ann. 512; State v. Rohfrischt, 12 La. Ann. 382; Proof of a different crime from the one charged is admissible when both offenses are closely linked and constitute part of the res gestae. Harr’s Crim. Jurisprudence of La. p.' 676:
“The test (of res gestae) is whether the fact or circumstance put in evidence is so connected with the main fact under consideration as to elucidate its character, to further its object, or to form in conjunction with it one continuous transaction.” Id. p. 682.
The evidence was clearly relevant. The two women and Breeland were murdered at the same time by the same person or persons, and evidence as to the killing of the women threw light on the killing of Breeland, and vice versa.
Bills 6 and 7 are bad for the same rea-sons, and because the dying declarations of Breeland were confined to the circumstances of the killing of the three persons at the same time by the same person or persons. Besides, this court has held more than once that a dying declaration must go in as a whole, and is not rendered inadmissible because some of its statements, of themselves and if standing alone, would be inadmissible. State v. Carter, 107 La. 792, 32 South. 183.
Bill No. 8.
On cross-examination of a witness for the' prosecution, the defense brought out a statement that the witness told Avery Blount that Breeland had accused him of being one of the parties who did the killing, and that Blount, notwithstanding, went to the scene of the homicide, and remained there until the witness left. Having elicited this testimony, the defense then asked the witness to state what Blount had said by way of reply when informed that Breeland had accused him of committing the deed. The prosecution objected on the ground that the declarations of the accused were not admissible as evidence in his favor. This objection was’ properly-sustained, as the declarations were made hours after the homicide and formed no part of the res gestee. State v. Johnson, 35 La. Ann. 968.
Bill No. 9.
We can hardly understand the reason for reserving this bill. The sole question before the judge was whether the evidence adduced disclosed a proper foundation for the admission of the dying declarations of the deceased. All the witnesses tendered were heard, and there was some conflict in the testimony as to what was said by the deceased. The counsel for the defense offered to prove by one of the witnesses that what the deceased said amounted to nothing more than an expression of opinion. The judge correctly ruled that it was for the court to decide whether the deceased merely expressed an opinion or made a positive declaration.
Bill No. 10.
The defense objected to the admission of the dying declarations of the deceased in evidence, on the ground that J. O. Breeland was *209 an ex-convict who had. served out his sentence in the penitentiary for the crime of mule stealing. The facts are admitted. It is'admitted in brief and argument of defendant that, under the provisions of Acts No. 29, p. 39, of 1886, and No. 185, p. 355, of 1902, and No. 41, p. 77, of 1904, J. O. Breeland, if living, would be a competent witness.
“On the question of competency the general rules of the competency of witness are applicable. That is, where the_ declarant would be a competent witness if living, his dying declaration is admissible, unless otherwise objectionable ; but where for any cause, such as mfamv, want of religious belief, lack of mental capa' ity, or the like, the declarant would not have been permitted to testify, had he survived, his dyinedeclaration is not admissible in evidence. And where by statute a want of religious belief is no longer a disqualification of witnesses, although the irreligious character of the declarant cannot be relied on to exclude his dying declaration, it may be shown that he did not believe in a future state of rewards and punishments, for the purpose of impeaching his credibility; for such a person, although in articulo mortis, might not be solemnly impressed with the necessity of speaking the truth.” 21 Cyc. 991, 992.
■Act No. 29, p. 39, of 1886, reads in part as follows:
“That a competent witness in all criminal matters shall be a person of proper understanding.”
It has been held that persons who have been convicted of infamous crimes and have served out the sentences imposed therefor are competent witnesses, provided they meet the requirements of the statute in the matter of understanding. State v. Mack, 41 La. Ann. 1082, 6 South. 808; State v. McManus, 42 La. Ann. 1194, 8 South. 305. In State v. Williams, 111 La. 179, 35 South. 505, it was held that Act No. 29, p. 39, of 1886, imposed no disqualification on account of lack of information concerning or faith in the existence of a Supreme Being or a future state of rewards and punishments, and' no disqualification outside the statute can be recognized by the courts. The only objection made below was that the deceased was an ex-convict. This objection was properly overruled, as Breeland, if living, would have been a com- / petent witness against the defendant. Objections not made at the time cannot be considered.
Bill No. 11.
On the cross-examination of one Ben Kinchen, a witness for the defendant, who had testified in chief that he had killed Joe Everett and wounded' John Everett and Walter Everett a few days before the murder of John O. Breeland, counsel for the state, for the avowed purpose of testing the credibility of the witness, asked a number of questions, which were answered. Counsel for the state then asked the witness if he had not gone to a certain house by mistake. Defense objected that the inquiry was not relevant to-any matter brought out on the direct examination, and was immaterial. The objection was overruled. The judge says:
“Witness Ben Ivinohen on his examination in chief testified that be left Tickfaw just about li o’clock, and went in a northerly direction toward Independence Town, about 5 miles above Tickfaw. That he reached Independence some time-after, and went to Mrs. Sanders’ house, just north of Independence, The defendant (witness) having fixed his whereabouts at two different times, I permitted the state to ascertain his. whereabouts, routes, movements, and actions during the interval.”
The inquiry seems to have been relevant for the purpose of impeaching the story of Kincheu, who was also under indictment for the murder of Breeland and the two women. The answers objected to were mainly in the negative, and prejudiced neither the witness, nor the defendant.
Bill No. 12.
The defense called an ex-member of the grand jury for the purpose of showing that one of the state’s witnesses had on a former occasion testified to a falsehood before the grand jury, and requested the trial judge to-release the ex grand juror from his obligation of secrecy. The judge refused, because such release was unnecessary for the reason. *211 that the testimony sought to be elicited, was inadmissible on elementary grounds. The ruling was correct. A witness cannot be impeached in such a manner.
Bill No. 13.
George Nelson, witness for defendant, was asked:
“Did Walter Everett (state witness) ever acknowledge to you that he had sworn falsely before this court in order to convict a man?”
On objection by the state, the question was ruled out, because the statement inquired about was on an entirely different subject-matter from the case on trial, and because the witness sought to be impeached had not been put on his guard. The judge might have added that the offer was an attempt to prove general bad character by* evidence of the acknowledgment of a particular instance of wrongdoing. The ruling was correct.
Bill No. 14.
The objection to the adjournment of the court from Saturday, 3:55 p. m., until Monday morning, to enable the state to summon witnesses in rebuttal, is without merit. The matter was one within the discretion of the court.
Bills Nos. 15 and 16.
The testimony objected to was admissible in rebuttal according to the statement contained in the per curiam of the judge. If such testimony was a mere rehash of the evidence, as stated in defendant’s objection, no harm was done. The testimony of the defendant that he did not recognize the Breelands when he passed them in the dark made it important for the state to contradict him on this point. The testimony of the two witnesses in rebuttal tended to show that as vehicles passed the name of “Breeland” was called or shouted in a woman’s voice. We do not very well see how the state could have anticipated that the defendant would take the stand and testify that he did not recognize the Breelands as he passed them in the road.' The purpose of the testimony in rebuttal is to.disprove and discredit the evidence adduced on the part of the defendant. The whole matter of rebuttal evidence is largely in the discretion of the trial judge, and his rulings will not be disturbed except in extreme cases. Marr’s Crim. Jurisprudence of La. p. 744 et seq.
Bill No. 17.
The testimony of another witness called in rebuttal by the state was objected to on the same grounds stated in bills Nos. 16 and 15. While the subject-matter was different, the per curiam shows the same reasons for the admissibility of the evidence to disprove certain testimony adduced on the part of the defendant to show that another person might have committed the crime. While the evidence in chief had touched somewhat on the physical condition of this third person, it was merely in anticipation of a supposed line of defense that would be adopted by the accused. The evidence in rebuttal was restricted by the court to points not covered by the evidence in chief. We see no error in the ruling.
Bill No. 18.
This bill was reserved to a portion )of the charge of the court to the jury, as follows:
“Under the laws of Louisiana the testimony of one witness is sufficient upon which to base a verdict in all cases of this character, provided such testimony satisfies you of the guilt of the accused beyond a reasonable doubt.”
This is good. law.
“At common law, one witness is sufficient in all cases, with the exception of perjury, at every stage of the prosecution.” Wharton on Grim. Law, vol. 1, § SOI.
By statute two were required in high treason. Id. ' We .must assume that the charge as given had some application to the case. *213 It may be that it was made to meet some contention of counsel before the jury. It is argued that the charge might have induced the jury to believe that the dying declarations of Breeland were per se sufficient to convict the defendant. But the judge also charged as follows:
“When such evidence as dying declarations have been brought into a case, it is to be weighed by the jury in connection with all the other evidence, to the end that their findings may be based on the entire evidence and upon all the facts and circumstances that may have been proven.”
If the accused desired a more practical charge or one more applicable to the facts of the case, his counsel should have formulated a special charge and submitted the same to the trial judge.
Bill No. 19.
This bill was reserved to the following excerpt from the general charge, to wit:
“You are not at liberty to disbelieve as jurors if you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if an oath had not been administered.”
This extract forms the last part of a paragraph of the charge relating to doubts produced by undue sensibility, or arising from trivial or fanciful suppositions, or remote conjectures as to a possible state of facts differing from that established by the evidence; and the court in conclusion addressed the jury in the language already quoted, which seems to be a paraphrase of the language used in Spies v. People, 122 Illl. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320, 325. The judge had already charged the jury as follows:
“Your personal opinions as to facts not,, proven cannot properly be considered as the basis of your verdict; you may believe, as men, that certain facts exist, but as jurors, you can only act upon evidence introduced upon the trial, and from that alone you must form your verdict, unaided, unassisted, and uninfluenced by any opinion or presumption not based upon the testimony.”
Stripped of rhetorical embellishment, the extract objected to means simply that the jurors should exercise their judgment as in other matters of importance. On exception being made, the judge modified the charge as follows:
“Gentlemen, if you believe from the evidence, as men, that certain facts exist, then you have no right to disbelieve as jurors. You must base your verdict solely upon the evidence and the law as given by the court, and be influenced in your finding by nothing else.”
The charge was full, fair, and impartial, and, considered as a whole, left no room for complaint. We cannot assume that the jury .was misled by the remarks excepted to by the accused, especially after the modified charge was given. '
Bill No. 20.
The defendant requested the court to charge the jury that if the evidence éstablished beyond a reasonable doubt a certain state of facts—
“the jury in such case should consider well and weigh carefully all the evidence introduced by the state and the defense, all the explanations offered. The presumption of the law is that the accused is innocent, and the burden of proof is upon the state to overcome this presumption. And the evidence on the whole in such a case must not only be consistent with the guilt of Avery Blount, but inconsistent with any other rational conclusion, and, if it is not so, then he is entitled to be acquitted.”
The judge charged the last paragraph as requested. He properly refused to charge the hypothetical statement of facts, because no proposition of law was predicated thereon.
Bills of Exceptions Nos. 21, 22, 23, 24.
These bills were reserved to the refusal of the court to grant defendant a new trial. Bill No. 21 was to the refusal of the judge to grant a new trial on the ground of the intimidation of the defendant, jurors, and witnesses by the presence of a company of local state militia in and about the courthouse and jail during the trial.
*215 The Governor, at the request of the presiding judge, ordered the company to report to the sheriff during the trial to protect the court and its officers, the defendant, the ju-' ry, and the witnesses, and to preserve the peace. There is nothing to show that the defendant was prejudiced in his trial by the presence of this company, the members of which were men well known to the defendant, and some of them related to his counsel. Bill No. 22 was reserved to the refusal of the judge to grant further time to procure the attendance of alleged witnesses whose names were furnished to defendant in an anonymous letter. There was no motion in writing or affidavit filed. The request for delay was made on the day fixed for -the hearing of the motion for a new trial. We are not prepared to say that the judge abused his discretion in refusing to grant further delay.
Bill No. 23 was to the refusal of the judge to grant a new trial on the ground that Juror Thompson had stated, before he was taken on the jury, that defendant ought to be hung, or words to that effect. The alleged statement was sworn to by one witness, who was positively contradicted by Thompson. We cannot say that the judge erred in believing Hr. Thompson. Similar charges had been made as to two other jurors, hut no witnesses were adduced to substantiate them.
Bill No. 24 was taken to the refusal of the judge to grant a new trial on the ground that the verdict of the jury was contrary to the law and the evidence. This bill presents nothing that this court can review, as we have no jurisdiction over the facts. The responsibility for conviction on the evidence rests with the jury and the trial judge.
Bill No. 25 covers the same ground as the four bills just considered.
It is therefore ordered that the verdict and sentence in this case be, and the same are hereby, affirmed. -