## JOHN ECKART v. J. P. KIEL.[1]

October 3, 1913.

Nos. 18,152—(255).

**Dynamite cap — question for jury.**
     1. Defendant had dynamite caps in his possession upon his farm. He sold the farm to plaintiff. Some time later plaintiff's minor son was injured by the explosion of a dynamite cap which, it is claimed, was picked up by a child in the barn yard. Under the testimony, which is fully stated in the opinion, it is held that the court should have submitted to the jury the question whether the cap which caused the injury was one of those defendant had in his possession.

**Proof of negligence a question for jury.**
     2. The court should have submitted to the jury the question whether negligence on the part of defendant was proven.

**Credibility of testimony a question for jury.**
     3. Defendant's testimony as to the disposition he made of the dynamite caps was not directly contradicted. His testimony as to other material matters was flatly contradicted. His testimony where uncontradicted cannot be held true as a matter of law. Its credibility was for the jury.

**Jury may draw inference.**
     4. If the jury should believe that he gave a false account of the disposition of these caps, they would be at liberty to infer that the truth would be unfavorable to him.

     Two actions in the district court for Freeborn county, one by the father on behalf of his minor son to recover $5,000 for personal injuries sustained by the latter, and the other by the father on his own behalf to recover $1,400 for medical expenses incurred and for loss of services of the minor during his minority. The cases were tried together before Kingsley, J., who when plaintiff rested granted defendant's motion to dismiss the actions without prejudice. From an order denying plaintiff's motion for a new trial in each action, he appealed. Reversed and new trial granted.

     [1] Reported in 143 N. W. 122.

*Morgan & Meighen* and *Sasse & French,* for plaintiff.
*Dunn & Carlson,* for respondent.

HALLAM, J.

Emil Eckart was injured by the explosion of a dynamite cap on December 27, 1910. These actions were brought to recover damages on allegation that the injury was caused by the negligence of defendant. The actions were tried together. At the conclusion of plaintiffs' testimony the defendant moved for a dismissal of each case on the ground that there was a failure to prove a cause of action. The motions were granted. Plaintiffs moved for a new trial. This was denied and plaintiffs appeal. The only question on this appeal is whether the evidence made out a case for submission to the jury as to the liability of the defendant. We are of the opinion that a prima facie case was made out, and that the court erred in dismissing the cases.

The facts as disclosed by the testimony are as follows: Defendant owned and lived upon a farm in Freeborn county. About the last of August, 1910, he employed one John Peterson to assist him in blasting some stone. Peterson, at the request of defendant, procured at a hardware store at Albert Lea some dynamite sticks and dynamite caps. After they had finished the work of blasting there was left a stick and a half or two sticks of dynamite and four dynamite caps. Peterson put the sticks in one package and the caps in another, and wrapped each package with wrapping paper. The package containing the caps he tied with a string. These caps were from an inch to an inch and a quarter long. The package as it was wrapped up was about three inches long and about an inch through. Peterson handed both packages to defendant, telling him that the caps were the more dangerous of the two in handling. Defendant stated that he might use them later on to blast some stumps. Peterson and defendant then walked to the granary together. Defendant went into the granary, and put the package containing the dynamite sticks into an old iron kettle which he hung upon a nail in the granary. There is no evidence as to what disposition was made of the

package containing the caps, except the evidence of defendant, to which reference will presently be made.

Some time later defendant sold his farm to plaintiff, John Eckart. Eckart took possession November 1. He had a family of small children. Emil, the injured boy, was then about fourteen. One day, about the middle of December Emil was fixing a buggy on the east side of the granary, the door being on the south side. A little brother George, two or three years old, was playing on the ground close to the granary door with a larger brother Irvin, about eight or nine. The testimony of Irvin was excluded by the court, but Emil testified that George came around to him with a cap in his hand and handed it to Emil, saying as he did so: "See what I found." This remark was stricken out on motion. Emil put the cap into his pocket and kept it until December 27, thinking it was an empty cartridge and intending to use it on a pencil. It proved to be a dynamite cap of the same kind as those used by defendant. On December 27 Emil undertook to clean out with a darning needle what he thought was some dirt in the bottom of the cap. This caused the explosion.

Defendant was called to the stand by plaintiff for cross-examination under the statute. He admitted having received from Peterson the two packages, one containing the dynamite sticks and the other containing the dynamite caps. He admitted going into the granary and placing the package of dynamite sticks in the iron kettle. He testified that he put the package of caps in his vest pocket and that two or three days later he took both the sticks and the caps at the same time to a hardware store in Albert Lea and exchanged them for nails. There is abundant contradiction of this testimony as far as the dynamite sticks are concerned.

One witness, Hans Midje, testified that after defendant had left the farm, and before the accident, he met defendant at the granary; that the package of dynamite sticks was then in the iron kettle, and defendant called his attention to it and talked of taking it away. Midje further testified that he was at the granary after the accident and that the package was still there. Walter Eckart testified that the package of dynamite sticks was there in the kettle two weeks after the accident and was then taken away by defendant's son.

Plaintiff testified that after the accident he saw the package of dynamite sticks in the kettle in the granary. He further testified that a week or two after the accident he met defendant and that defendant, speaking of the accident, said: " 'Well, * * * when I heard this, my God, I thought of the dynamite I left there * * * but I heard different; I heard he found one of these caps down there * * * But * * * I never got a cap from John Peterson, only some dynamite. But the only way I see he must have dropped something * * * that is the only way, because I never got none back.' "

There is evidence tending to show that no other dynamite caps were used about these premises.

In order to charge defendant with liability it must appear, (1) that the cap which caused the damage was one of the caps left in defendant's possession, and (2) that it came into the hands of the injured boy through negligence of defendant.

1. It appears to us that a jury might fairly infer that the cap that caused the injury was one of those left by Peterson with defendant. The package of four caps was last seen in the possession of defendant as he went into the granary. It may be fairly inferred that the cap that caused the injury was picked up by the child where he was at play just outside this same granary door. The presence of dynamite caps in the hands of children, or even in the hands of adults, is so unusual, and the custody of such articles is usually so carefully safeguarded, that the likelihood of this cap coming from any other source than defendant's package is extremely doubtful. It is a matter of fair inference that this cap was one of those in the package which was known to have been in the possession of defendant in and about the granary. True, the caps when left with defendant were wrapped in paper and tied with a string, but the breaking of a paper package in and about a granary is not strange or unusual.

2. The next question is: If this cap was one of defendant's, can a jury fairly infer negligence on the part of defendant from the facts proved? There can be no doubt that defendant owed to plaintiff and his family the duty of due care in safeguarding this explosive.

Mattson v. Minnesota & N. W. R. Co. 95 Minn. 477, 104 N. W. 443, 70 L.R.A. 503, 111 Am. St. 483, 5 Ann. Cas. 498; Vills v. City of Cloquet, 119 Minn. 277, 138 N. W. 33. Considering all the facts in evidence, we are of the opinion that negligence on the part of defendant might be fairly inferred. Ordinary care requires that such dangerous instrumentalities should be cared for with the utmost caution (Mattson v. Minnesota & N. W. R. Co. supra) with a degree of caution in fact quite inconsistent with the idea of its being found lying loose upon the ground.

3. It is urged that the testimony of the defendant was conclusive that these caps were taken to the hardware store within two or three days after they were left with defendant, and long before the accident. It is true defendant so testified, and there is no testimony directly contradicting him in this particular. There is however violent contradiction of defendant's testimony in other particulars. Defendant testified that he took both the dynamite sticks and the dynamite caps to the hardware store two or three days after the blasting. It is also to be noted that there is evidence that on one occasion he said that Peterson never gave him any caps. The testimony of so many witnesses directly contradicts defendant as to his disposition of the dynamite sticks which defendant claims were disposed of at the same time as the dynamite caps, that defendant's testimony as to the disposition of the caps cannot be taken as true as a matter of law. The rule is that, if the jury believe that any witness has wilfully sworn falsely to any matter material to the issues of the case, then they are at liberty to disregard his entire testimony, except so far as it has been corroborated by other credible witnesses or by facts and circumstances proven on the trial. Dallemand v. Janney, 51 Minn. 514, 53 N. W. 803; Schloss v. Josephs, 98 Minn. 442, 108 N. W. 474. The credibility of the witness in such case is wholly a matter for the jury. They may believe or disbelieve his testimony as to other facts, according as they deem it worthy or unworthy of belief. Schuek v. Hagar, 24 Minn. 339, 345. The truth or untruth of defendant's story was accordingly a question for the jury.

4. In fact we are of opinion that, if the jury believe defendant's testimony to be untrue, they might do more than merely disregard

it. Defendant is the only person who has knowledge of the disposition he made of these dynamite caps. If he has given a false account of their disposition, and if he has also, as some of the testimony shows, given conflicting accounts as to the disposition made of them, we think a jury would be at liberty to infer that the truth as to their disposition would be unfavorable to him. 1 Wigmore, § 278.

Order reversed and new trial granted.