## HATZIS v. UNITED STATES FUEL CO.

No. 5071.   Decided May 11, 1933.   (21 P. [2d] 862)

*King & King,* of Salt Lake City, for appellant.

*Henry Ruggeri,* of Price, and *C. W. Morse,* of Salt Lake City, for respondent.

FOLLAND, Justice.

Ulyssis Hatzis, a minor, by his guardian ad litem, brought this action to recover damages for personal injuries which he alleged he sustained because of negligence of defendant. The court, at the close of the evidence, directed the jury to return a verdict of no cause of action and entered judgment thereon for defendant. Plaintiff appeals and assigns error of the trial court in granting defendant's motion for directed verdict, and in denying plaintiff's motion for new trial.

Plaintiff, a boy of seven years, was on September 20, 1926, severely injured by the discharge of a highly explosive cap, such as is used in coal mining, which he found on the shelf of a cupboard in the house to which his parents and family had recently moved. George Hatzis, plaintiff's

father, had been working as a coal miner in defendant's mine at Hiawatha, Utah, but when this mine was closed Hatzis was given employment in defendant's mine at Mohrland. He moved his family into a house at Mohrland owned by defendant company and rented to him by it. The house had been left in dirty condition by its former occupant. Hartzis and his family moved into the house about 2 or 3 o'clock of the afternoon of September 16, spending that day and the next in cleaning the place to make it habitable. The third day Hatzis went to work in the mine. On the morning of the third day the boy Ulyssis, while helping his mother clean the cupboard, found two mine caps wrapped in a piece of newspaper. Unknown to his mother he put the caps in his pocket and left the house and with another boy went into a cellar of a nearby vacant house. There he applied a lighted match to one of the caps when it exploded causing serious injuries to Ulyssis. The caps were of the same kind as used by defendant in its mines for the firing of shots to blast out the coal. The record discloses that defendant company issued caps to its miners only when they had proceeded with the day's work sufficiently far to be able to estimate the number of caps they would need. No caps were delivered until after an inspection by the shot firer and then only such number as the miner, confirmed by the shot firer, estimated he needed for the day's work. Any unused caps were required by defendant to be returned by the miners to the checkman or shot firer at the checkroom before they left the mine. The men paid for caps delivered to them by checks previously purchased by them, and upon return of any unused caps they were given checks for the same.

The complaint, stripped to material essentials, alleges: That defendant in the operation of its mine uses giant powder and caps of a highly explosive nature which it issues to its employees to be used by them for the benefit of defendant; that it is the duty and obligation of defendant to keep its houses in a clean and habitable condition, and free from traps, dangerous instrumentalities, and particularly

explosive caps; that it is its duty before it rents houses to its employees and their families to inspect and see that such houses are free from traps, dangerous instrumentalities, and particularly explosive caps, and to advise and acquaint its employees of any such traps or explosive caps in or about its houses before it rents such houses to its employees and their families; that defendant well knew, or by the exercise of reasonable care and diligence should have known, that in the house assigned and rented to plaintiff's family there were several highly explosive caps, and defendant, well knowing and appreciating, or with the exercise of reasonable care and diligence should have known and appreciated, the presence of such caps, nevertheless carelessly, negligently, and recklessly failed to warn either plaintiff or members of his family of the presence and character of such caps, and carelessly, negligently, and recklessly failed and neglected to remove such caps or guard them or keep the plaintiff from being injured by them, and that by reason of the explosion of such caps occasioned through the negligence and carelessness of defendant as therein stated plaintiff was injured.

Defendant by answer denied the allegations of negligence contained in plaintiff's complaint, admitted the renting of one of its houses to plaintiff's father, and the occupancy of the house by the family, admitted it used giant powder and caps of a highly explosive character in the operation of its *mine, and that the caps were issued to its employees under* rules and regulations reasonably safeguarding the same; and on information and belief denied that the caps alleged to have caused the injury to plaintiff were issued by it to its agents, employees, or servants or to any other person.

The gist of the negligence charged in the complaint is that defendant, as the landlord well knew, or by the exercise of reasonable care and diligence should have known, of the presence of the caps in the cupboard, where found by plaintiff, and negligently failed to remove them or to warn plaintiff or his family of their presence. We

find no evidence in this record directly proving or tending to prove that the defendant either stored the caps in the place where found or knew that they were there, or that any of its agents, servants, or employees placed them in the cupboard or knew of their presence therein. There is therefore no liability on defendant as landlord unless the law imposes the duty on it to inspect the premises to discover· the hidden explosives and to remove them or to. warn plaintiff and his family of their presence. We are satisfied the law imposes no such duty on the landlord. The rule applicable is well stated in 16 R. C. L. 775, as follows:

"In the absence of warranty, deceit, or fraud on the part of a landlord, the rule of caveat emptor applies to leases of real estate, the control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability to the purposes for which they are hired. Hence, for personal injuries received by him from latent defects therein, of which the landlord had no knowledge at the time of the lease the latter cannot be held responsible."

And at page 777:

"According to the weight of authority an owner of property, unaffected by a public use, does not owe to his prospective lessee the duty of actively exerting ordinary care at the time of leasing to discover and apprise him of unknown defects which the lessee could equally well find out for himself."

To similar effect are other authorities: 36 C. J. 43; 2 Underhill, Landlord & Tenant, 784; 1 Tiffany, Landlord & Tenant, 556; 18 A. & E. Enc. of Law (2d Ed.) 225; 1 Thompson on Negligence, § 1130.

In *Wilson* v. *Woodruff*, 65 Utah 118, 235 P. 368, 369, 43 A. L. R. 1269, this court, in harmony with an almost unanimous line of authority, stated the rule as follows:

"The general proposition is well settled that in the absence of warranty, deceit, or fraud on the part of the landlord, the lessee takes the risk of the quality of the premises, and cannot make the landlord answerable for any injuries sustained by him during his occupancy by reason of the defective condition of the premises or their faulty construction."

Appellant cites and relies on the case of *Hines* v. *Willcox,* 96 Tenn. 148, 328, 33 S. W. 914, 34 S. W. 420, 34 L. R. A. 824, 832, 54 Am. St. Rep. 823, wherein it is stated that

"A landlord is liable to his tenant for damages that may result from the unsafe and dangerous condition of the premises leased when that was known to, or with reasonable care and diligence might have been known to the landlord, but not to the tenant, although the latter examined the premises and did not discover the defect."

The doctrine of this case, and other Tennessee cases to similar effect, has not been followed by courts of other jurisdictions as indicated by the following from 16 R. C. L. 779:

"In Tennessee while it is recognized that the duty of disclosing to a tenant hidden defects and secret conditions that contribute to make the property unsafe is not imposed upon a landlord who is ignorant of them without fault or negligence on his part, yet the view is taken that a landlord who rents premises which are in an unsafe and dangerous condition on account of latent defects is under the duty of exercising reasonable care to discover such defects and apprise the tenant thereof, and that his failure to exercise such care will render him liable to the tenant for injuries he may receive therefrom without negligence on his part. This view, however, has been expressly disapproved in other jurisdictions, and seems to stand alone in the jurisdiction in which it was originally announced."

In view of the law in that respect appellant cannot recover by reason of any failure on the part of defendant to inspect the rented premises to discover the caps in the cupboard. Nor was it negligence on the part of defendant to fail to warn or notify plaintiff or his family of the presence of such dangerous caps in the absence of evidence proving or tending to prove that it placed the caps in such premises or had knowledge of their presence therein.

Appellant, however, urges that the duty resting on defendant in the care and use of explosives is of the highest character, and that there was sufficient evidence to go to the jury on the theory that defendant was guilty of negligence in "allowing or negligently permitting its employees to carry from the mine these dangerous

mining caps." We think no issue is made by the pleadings with respect to this point. The fact is alleged that defendant in the operation of its mine "uses giant powder and caps of a highly explosive nature, and the said defendant issues and gives to its agents, servants, and employees said explosive caps to be used by them for the use and benefit of the defendant company," but no negligence is charged with respect to the manner in which the company issued these caps to its employees. The court permitted evidence to be introduced, over objection by defendant, of the practice of defendant in the storing and handling of explosives and the issuance of mine caps to employees. This evidence does not show that defendant "allowed or negligently permitted its employees to carry away from the mine these dangerous caps," but, on the contrary, proves that the company exercised a high degree of care to prevent the misuse or the carrying away of the caps from the mine.

A great deal of space is taken in appellant's brief in the citation of cases wherein those who store or use explosives are held to a high degree of care with respect thereto, and imposing liability for negligence or carelessness in placing or leaving such explosives in places accessible to children or others who were injured as a result of such negligence. The cases cited are found in the notes of 10 L. R. A. (N. S.) 376; 14 L. R. A. (N. S.) 586; 24 L. R. A. (N. S.) 1257; 43 A. L. R. 435; and 49 A. L. R. 160. In practically all of the cases cited the explosive agency causing the *injury* was shown to have been at some time in the possession and under the control of the defendants, and by them carelessly left in places to menace others. There is no such showing here. While the caps found by plaintiff are the same kind as used by defendant in the mines, other mining operators of Carbon county also used the same kind of caps, and employees from time to time go from one employer to another. The case of *Eckart* v. *Kiel,* 123 Minn. 114, 143 N. W. 122, 4 N. C. C. A. 311, is strongly relied on by appellant. That case is discussed in *Bogdon* v. *Los Angeles & S. L. R. Co.,* 59 Utah

505, 205 P. 571, 577, a case involving an injury, by explosion of gunpowder, to an eight year old boy who found the powder on the floor of an open box car in defendant's yard. Because of different facts the Bogdon Case proceeded on other legal principles than this case, yet the comments on the cases cited, which were in many instances the same cases as cited here, are pertinent and applicable. Mr. Justice Frick, who wrote the opinion, said:

"The decision in the case of *Eckart* v. *Kiel*, supra, is most liberal in allowing recovery in cases where children are injured by highly explosive substances. In that case the owner of a farm sold it to the father of the boy who was injured. In leaving the farm and at the time of surrendering possession to the purchaser the former left some dynamite caps, which were shown to be very dangerous explosives, on the premises, where the children would in all probability find them, and which were found by the purchaser's child, a boy of tender years, who was seriously injured by the explosion of one of the caps which he found and with which he was playing. In a later Minnesota case, *Larson* v. *Duluth, etc., Ry. Co.*, 142 Minn. 366, 172 N. W. 762, it is held that before an owner of property can be held liable for injuries resulting from explosives which are found or discovered on his property even by one of his employees it must appear that he had notice of their presence. In the Eckart Case it was made to appear that the owner of the farm knowingly stored and knowingly left the dynamite caps where they were found, and the court held that those facts justified a finding of negligence on his part.   *   *   *

"There is not a single case that has been cited where the explosive was not knowingly stored or left at a place which was either a public place, or where it was known that children had a right to go, and where they ordinarily did go, or the place where the explosive was stored or placed was one to which children had access and to which any person of ordinary prudence and intelligence would reasonably expect that children would go and might suffer injury. In this case, however, the undisputed evidence is to the effect that the defendant did not know that there was any powder in the car. Not being cognizant of that fact, it could not guard against the accident."

We are unable to find any evidence of negligence on the part of the respondent corporation. It is not shown that the corporation placed the caps where they were found by plaintiff, or that it knew they were there, nor that it failed to

discharge any duty imposed on it by law by reason of its ownership of the rented premises.

The judgment of the district court of Carbon county is affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and MOFFAT, JJ., concur.