**ELLIS et al. v. KOLB et al.**

No. 17280.

Court of Appeal of Louisiana. Orleans.

May 20, 1940.

Clark & Thompson, of Monroe, and William P. Burke, Jr., of New Orleans, for appellants.

Cahn & Cahn and Rosen, Kammer, Wolff & Farrar, all of New Orleans, for appellees.

WESTERFIELD, Judge.

This suit is brought by Mr. and Mrs. Prioleau Ellis against Conrad Kolb and the Maryland Casualty Company, his underwriter, for $15,000 damages due to physical injuries sustained by Mrs. Prioleau Ellis due to a fall which occurred in Kolb's Restaurant on August 27th, 1937, at about 7:30 P. M. Mr. Ellis claims $155.28 as expenses incurred by him, as head and master of the community, in connection with medical fees, drugs, etc. Plaintiffs allege that as Mrs. Ellis entered Kolb's Restaurant, on the evening of the accident, she was escorted to a table by an employee, apparently the head waiter, and that another waiter, pursuant to the custom obtaining in Kolb's and other restaurants, pulled out the chair for her and that as he did so, she prepared to seat herself "reasonably assuming that the waiter, who was holding the chair, would comply with the usual custom and push it in so that petitioner could sit on it", but that he failed to push it in with the result that she fell to the floor and sustained serious and painful injuries. Defendants at first denied that Mrs. Ellis fell in the restaurant because of the lack "of sufficient information to justify a belief" but that "if said Mrs. Katheleen Gordon Ellis sustained any injuries as a result of an accident in Kolb's Restaurant, concerning which defendants lack any information, defendants specially deny that any of the waiters or employees of said restaurant had any connection. whatever with said accident or were in any way responsible therefor". Answering further and, in the alternative, defendants averred that if any of the waiters or employees of Kolb's restaurant were in any way connected with the fall of Mrs. Ellis, that she was guilty of contributory negligence, in that she failed to exercise ordinary care in assuming that the person who was holding the chair would push it towards the table at the moment that she intended to sit down, and that it was her duty to see that the chair was in a proper position before she undertook to seat herself. A supplemental answer was filed by the defendants in which it was stated that subsequent to the filing of their original answer, defendants had discovered that Mrs. Ellis had met with an accident in Kolb's Restaurant on August 27th, 1937, and that, therefore, they desired to amend their answer in that particular. This supplemental answer also contained certain averments, the effect of which were to intimate, if not charge, that Mrs. Ellis had been a member of a drinking party prior to her entrance into the restaurant and that she was under the influence of liquor when the accident occurred.

Plaintiffs objected to the filing of the supplemental answer upon the ground that it changed the issue, whereupon defendants struck out all reference to the drinking of alcoholic liquors. Nevertheless, the court excluded the supplemental answer, and its action is complained of, but, we believe, without justification, since the alternate defense in the original answer was sufficient for all purposes of their defense, except drunkenness which they voluntarily abandoned in recognition of its impropriety under their pleadings.

There was judgment below in favor of defendants dismissing the suit and plaintiffs have appealed to this court.

Since it is admitted that Mrs. Ellis fell in the restaurant on the night mentioned

in her petition, the first question to be considered is whether her fall was occasioned by the negligence of an employee of the defendant's restaurant.

The record shows that on the evening of the accident, Mr. and Mrs. Ellis, Messrs. Harold Grant, St. Clair Adams, Jr., Tom Bramhall and Jack Brill, were gathered at the Cocktail Bar of the St. Charles Hotel and all except Tom Bramhall and Jack Brill concluded to go to Kolb's Restaurant, which was a short distance away, for dinner. Mrs. Ellis and Mr. Harold Grant walked on ahead, reaching the restaurant first, Mr. Adams and Mr. Ellis having stopped at the cashier's desk in the St. Charles Hotel so that Mr. Ellis might cash a check.

As Mr. Grant and Mrs. Ellis entered the restaurant they were escorted to a table and, according to Mrs. Ellis, she fell to the floor when a waiter failed to push her chair forward as she attempted to seat herself, the chair having been moved back as she approached the table. The only person with Mrs. Ellis at the time was her escort, Grant, and he was in a position to corroborate or impeach her testimony, a most important witness from plaintiff's point of view. Her counsel realized this fact and sought to have him testify in plaintiffs' behalf only to be informed that he knew nothing about the matter or, as Grant expressed it in his letter to plaintiffs' attorneys, under date of November 3rd, 1937, about two months after the accident "I regret to say that I have no recollection of the accident which you advise occurred in Kolb's Restaurant sometime ago". Nevertheless, we find Mr. Grant appearing as a witness on behalf of defendants on March 30th, 1939, about nineteen months after the accident and about seventeen months after he claimed, in his letter to plaintiffs' attorneys, that he knew nothing whatever about it. As a witness, he pretended to know a great deal, in fact, his testimony covers twenty-eight typewritten pages in the record. The substance of it, as relates to the accident, is that Mrs. Ellis did not fall as she seated herself at the table upon first entering the restaurant, but sometime later when she returned from a visit to Mr. and Mrs. Bolles, who were seated at a nearby table, when "she either hit the side of her chair, something like this, and she was on that side, as I remember, and she just kind of went down.

She might have touched the chair. I know she was trying to sit down". He also stated that both Mr. Ellis and Mr. St. Clair Adams were present when she fell and that no waiter was near her chair at the time. He admitted that he was under the influence of intoxicants when he entered the restaurant.

Concerning Grant's testimony, defendants' counsel, in their brief, remarked that "the trial judge disregarded Grant's testimony due to the fact that he admitted on the stand he was intoxicated at the time, and that he wrote Mrs. Ellis' attorney that he knew nothing about the case, and we shall not rely upon his testimony in arguing the case." It thus appears that Mrs. Ellis' statement, finds no support in the testimony of Grant. In addition to the fact that Grant's testimony is rejected by counsel for both sides, and is further discredited by his written statement that he knew nothing about the accident, it is contradicted by Mr. and Mrs. Bolles, both of whom testified that Mr. Adams and Mr. Ellis were not in the restaurant at the time Mrs. Ellis fell and that her fall occurred before she visited their table. Mrs. Bolles testified that she was not acquainted with Mrs. Ellis at the time, though Mr. Bolles and Mrs. Ellis had known each other for a long time. She says that after Mrs. Ellis had fallen to the floor she came to their table and chatted a few minutes and returned to her own table; that subsequently she and Mr. Bolles visited the Ellis' table, at which time Mrs. Ellis went to the dressing room; that she followed her and found her extremely upset, nervous and very nauseated.

The evidence of Mr. St. Clair Adams and of Mr. Ellis, except for their statements to the effect that they were not present at the time of the accident, throws no light upon the manner in which Mrs. Ellis fell. With the exception of a Mrs. Tate, who simply gave evidence as to the custom obtaining in the restaurant of escorting patrons to their seats and holding the chairs for them, plaintiffs offered no other witness who knew anything about the accident.

The defendants, in addition to Mr. Harold Grant, produced Francis Hursey, a singer in the restaurant, Otto Burkhardt, the head waiter, Anthony Milliet, assistant head waiter, August Recknagle, the waiter in charge of the table at which Mrs. Ellis

was seated, Louis Lipkis, Sollie Sherman, Allen Kaplan and George Harrison, other waiters in the restaurant at the time.

Hursey stated that Mrs. Ellis came into the restaurant in company with several gentlemen; that she and three gentlemen were seated at the table in front of the bandstand; that she seated herself at the table, arose from her chair, walked away and upon her return fell as she attempted to seat herself; that no employee of the restaurant was near her when she fell and particularly that Gus Recknagle, the waiter, was not holding her chair at the time; also that "Tony" (Anthony Milliet, the assistant head waiter) came to the Ellis table five or ten minutes after the accident. But Hursey had signed a statement, at the request of an adjuster of the defendant insurance company, in which he and every other member of the band stated: "We know absolutely nothing about an accident that is alleged to have occurred in Kolb's Restaurant about 7:00 P. M. on the night of August 25th, 1937. We have never seen any of the waiters or bus boys pull a chair out too far for a customer to sit on as a consequence of which a customer fell to the floor. Further, we have never heard anything about any such accident happening in Kolb's Restaurant since our contract has been in force."

The date mentioned in this statement is August 25th, 1937, whereas the accident occurred on August 27th, 1937, but that slight variance is unimportant, since it is obviously an error and besides the statement declares "we have never heard anything about any such accident happening in Kolb's Restaurant since our contract has been in force." Hursey's testimony is subject to the further criticism that there were not three men at the table when Mrs. Ellis fell, but only one, Harold Grant. The other two referred to were obviously Mr. Ellis and Mr. Adams, both of whom testified that they were not there when the accident happened. Hursey also testified that Mrs. Ellis was wearing a green dress on the night of the accident, whereas, as a matter of fact, it was white, Mrs. Ellis testifying that she never owned a green dress. Again, Tony Milliet testified that he appeared at the scene immediately after the accident happened, whereas Hursey stated that it was five or ten minutes later.

Defendants' counsel call our attention to the fact that Hursey was testifying two years after the accident and that he might easily have been mistaken in unimportant details. We realize that there often appear discrepancies in the testimony of the most careful and correct witnesses and that, of course, after two years one might be mistaken in certain details, but this witness, not two years after the accident, but five months later, or on January 21st, 1938, declared in a written statement that he knew nothing about it.

Another point in connection with this witness' testimony is pressed by counsel for plaintiffs, which seems to us to be plausible. As we have said, Mrs. Ellis testified that she was wearing a white dress on the night of the accident, but all the waiters in the restaurant were wearing green jackets and, it may be, that when Hursey was asked to name the color of Mrs. Ellis' dress "he instinctively mentioned the color which had been filling his mind's eye during his denials, the vivid green of the jacket worn by the waiter who held the chair and who assisted in picking Mrs. Ellis up after her fall".

Otto Burkhardt, the head waiter, testified that he was in another part of the restaurant, or the main dining room, therefore, he did not see the accident, and that no report was made to him concerning it.

Anthony Milliet, the assistant head waiter, frequently referred to as "Tony", testified that at the time of the accident he was standing near the cashier's desk, about twenty-five feet distant from the Ellis table; that he did not see Mrs. Ellis fall, in fact, he says, he does not know whether she fell or not, but he was attracted by "a commotion" and walked over to the Ellis table, where he found twenty or thirty people standing up and laughing; that Mrs. Ellis was also standing up and was engaged in conversation with Mrs. Bolles; that upon inquiry he learned from someone in the group that a lady had fallen; that he subsequently talked to all the waiters in that section of the restaurant about the accident, but each of them denied any knowledge of it; and that he reported the incident to Burkhardt, the head waiter, but when Burkhardt was placed on the stand he denied having received the report. Moreover, Recknagle, the waiter regularly assigned to the Ellis table, as well as Lipkis, Sherman, Kaplan and Harrison, the waiters in the vicinity of the Ellis table, all denied that "Tony" had ever spoken to them of the accident. Milliet's statement that Mrs. Ellis was engaged in conversa-

tion with Mrs. Bolles at the time he reached the table is also subject to criticism because Mrs. Ellis did not know Mrs. Bolles at that time and, according to Mrs. Bolles, she did not meet her until after the accident when she was introduced to her by Mr. Bolles. Milliet further said that when he questioned the people at the Ellis table, he was told to forget the matter as Mrs. Ellis was humiliated enough.

The testimony given by defendants' other witnesses, Recknagle, Lipkis, Sherman, Kaplan and Harrison, is all to the effect that they knew nothing whatsoever concerning the accident.

■ We have examined the record in this case with unusual care and have discussed the testimony in extraordinary detail because the conclusion we have reached is at variance with the finding of the trial court on a question of fact, and for the further reason that it is largely based upon the testimony of a single and an interested witness, in fact, one of the plaintiffs, Mrs. Prioleau Ellis. There is, however, nothing unprecedented in such procedure. In Crawford v. Hines, 7979 of the docket of this court (unreported) see Louisiana and Southern Digest, we read: "The trial judge thought that the testimony of a single witness would not suffice to establish a defense under the action. But aside from the fact that we find two witnesses, we cannot accept this proposition as sound in law, for neither this statute nor any other fixes the number of witnesses necessary to establish any fact unless it be a contract involving more than $500.00 (Civil Code Art. 2277) or a claim against a deceased person brought more than one year after the decease. (Act 207 of 1906). Hence, no court can fix any such arbitrary standard; and a witness is either to be believed or not believed."

In the case of State v. Blount, 1909, 124 La. 202, 50 So. 12, 15, where a defendant had been convicted of murder, the Supreme Court of Louisiana approved the following charge to the jury, which had been the subject of a bill of exception: "Under the laws of Louisiana the testimony of one witness is sufficient upon which to base a verdict in all cases of this character, provided such testimony satisfies you of the guilt of the accused beyond a reasonable doubt."

Mrs. Ellis, however, is not without corroboration. It will be remembered the question presented is not whether she fell in the restaurant, but whether she fell as the result of the carelessness of a waiter who was seating her at the table.

■■ In the first place, it is conceded that it is the custom in Kolb's Restaurant, as well as other restaurants of that character, to seat the guests at the tables, that is to say, that a waiter pulls the chair back a sufficient distance to permit the guest to stand between the table and the chair and then to push the chair forward as the guest is in the act of sitting down, and that this custom is invariably practiced in the case of women patrons. Mrs. Ellis declared that "Tony" accompanied her to the table and that another waiter, whom she did not know, pulled her chair out for her. Tony, (Anthony Milliet) at first denied Mrs. Ellis' statement, but subsequently stated that he could not remember whether he had accompanied her to the table or not, but was very positive that in all cases where he escorts patrons, to the tables no subordinate waiter is permitted to help seat them. Recknagle testified directly to the contrary, but denied having had anything to do with Mrs. Ellis' chair at the time of her fall. The only witness, other than Grant, tendered by defendants, who claims to have seen the accident was Hursey, and he, as we have shown, as well as Grant, was utterly discredited. Furthermore, both Mr. and Mrs. Bolles testified that Mrs Ellis fell before she came over to their table, thus corroborating Mrs. Ellis in this repect. Then, there is the question of Harold Grant's conduct before and after his appearance as a witness. Counsel for defendants take the position that Grant's testimony should be entirely disregarded without it having any effect upon the case. We are unable to agree with this proposition. Something similar to what we have in mind is expressed in the following paragraph appearing in Corpus Juris, Volume 70, Verbo "Witnesses", page 760: "Disbelief of the testimony of a witness is not affirmative proof of facts of an opposite nature or tendency. But the triers of fact may be justified in doing more than merely disregarding false testimony, and may infer that the truth would be unfavorable to the witness."

In Eckart. v. Kiel, 123 Minn. 114, 143 N.W. 122, 124, the Supreme Court of Minnesota, in a suit for damages for physical injuries caused by the explosion of a dynamite cap found on a farm sold to the plaintiff by the defendant, the question was

whether the cap had been negligently left on the farm by the defendant. The court, in speaking of defendant's evidence, says: "In fact we are of opinion that, if the jury believed·defendant's testimony to be untrue, they might do more than merely disregard it. Defendant is the only person who has knowledge of the disposition he made of these dynamite caps. If he has given a false account of their disposition, and if he has also, as some of the testimony shows, given conflicting accounts as to the disposition made of them, we think a jury would be at liberty to infer that the truth as to their disposition would be unfavorable to him. 1 Wigmore, § 278."

Here, as we have seen, the only eye witnesses appearing for defendants, Hursey and Grant, are discredited. We do not believe that, under these circumstances, their evidence may simply be disregarded as of negative value. Besides, the story told by the plaintiff, Mrs. Ellis, is much more plausible and more in consonance with reason than that offered by the defendants. It is much more probable that Mrs. Ellis should have fallen as the result of the waiter failing to push back her chair, than in an attempt to seat herself without assistance. All that stands in the way of this version of the accident is the testimony of Hursey and Grant, both of whom had signed written statements declaring they knew nothing about the accident. These witnesses did not leave the case as they found it, without helping or hurting either side, but have had a definite effect, one that is favorable to plaintiffs and harmful to defendants. Particularly is this true with respect to Grant. If we could believe that this witness, from a high sense of honor and a deep devotion to truth, discarding all considerations of friendship and the amenities of social intercourse, had determined to give a "plain unvarnished tale", hewing closely to the line of truth and letting the chips fall where they may, we would have been prepared to applaud his position as one exhibiting a courageous adherence to principle, regardless of the criticism which the situation would seemingly justify and, incidentally, it would have been the end of plaintiffs' case so far as we are concerned, but when it appears that, without rhyme or reason, at the first appeal for assistance in the recovery of compensation for injuries, to a friend, received in an accident which he witnessed, he denies all knowledge of the occurrence and subsequently takes the stand in an attempt to repudiate, what we have come to believe was the truthful statement of his friend concerning her accident, we cannot dismiss his testimony as of no effect, because its natural tendency is to enhance the credibility of Mrs. Ellis and, under the circumstances obtaining, amount to an important factor in creating an abiding faith in the veracity of her testimony.

■■ The question of plaintiffs' contributory negligence, raised by the defendants, is based upon the contention that Mrs. Ellis was not justified "in assuming that the person who was holding the chair would push it towards the table" as she attempted to seat herself and that she should have made certain that the chair was in the proper position. We believe this contention to be without merit. It has been shown that it is the custom in all restaurants of the class of Kolb's for waiters to seat their patrons and Mrs. Ellis was entitled to rely upon the waiter, assigned to her, executing this courtesy efficiently. She was not obliged to anticipate his negligent handling of the chair. The authority cited by plaintiffs' counsel, Moore v. Vance, 4 La.App. 353, is in point. The syllabus of that case reads as follows: "The general rule is that every person has a right to presume that every other person will perform his duty, in the absence of reasonable ground to think otherwise, and it is not negligence for one to assume that he will not be exposed to a danger which could come to him only from a violation of a duty that another owes to him. Failure of a plaintiff to anticipate the defendant's negligence does not constitute contributory negligence."

See, also, Damonte v. Patton, 118 La. 530, 40 So. 153, 8 L.R.A.,N.S., 209, 118 Am. St.Rep. 384, 10 Ann.Cas. 862; 45 Corpus Juris, 954, Verbo "Negligence", Section 512.

■ Mrs. Ellis' injuries were serious and very painful. There is an agreement in the record to the effect that if Dr. C. P. Grey of Monroe, Louisiana, who treated Mrs. Ellis, were placed upon the stand, he would testify that on or about September 29th, 1937, Mrs. Ellis consulted him and that he found that she had sustained a concussion of the brain and that the X-ray pictures and report of Dr. William L. Smith, an expert Roentgenologist of Monroe, showed a fracture of the terminal segment

of the coccyx and a probable sacro-iliac separation. It was also agreed that if Dr. Smith were placed upon the stand he would testify that he made several X-ray photographs of Mrs. Ellis and that his diagnosis was similar to that of Dr. Grey.

Dr. William P. Bradburn, a medical expert, was put upon the stand by both plaintiffs and defendants, a most unusual circumstance, which elicited the following comment from the trial judge: "I would like to say this is the first time in sixteen years I have been on the bench that such a compliment has been paid to any physician's integrity, where both sides use him as their witness."

Dr. Bradburn confirmed the findings of Drs. Grey and Smith as to the fracture of the coccyx, though he would neither affirm nor deny that the sacroiliac sprain was due to the fall. He also stated that he was inclined to believe that there was some very definite trauma to the caudal nerve filaments due to the accident, which statement, we understand to be, a confirmation of the finding of Dr. Grey as to the concussion of the brain. Dr. Bradburn was unable to say whether Mrs. Ellis would ever be completely cured, but said that her suffering had been reduced fifty per cent. and that it is likely to be further reduced by treatment. Dr. Bradburn was testifying about eighteen months after the accident. When asked concerning Mrs. Ellis' probable recovery, he answered: "I think a fair statement is this, I hope to accomplish it, I cannot answer that I will positively, with a promise for the future * * *".

Under the circumstancs, we believe an award of $7,500 to Mrs. Ellis would be proper.

The amount of the medical expenses incurred by Mr. Ellis—$155.28—is not disputed.

During the pendency of the litigation the defendant, Conrad Kolb, died, and the testamentary executors of his estate were made parties defendant.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of Mrs. Prioleau Ellis and against the defendants, Mrs. Mary Elizabeth Schlosser Kolb, Joseph H. Reising and Milton Langbehn, testamentary executors of the estate of Conrad Kolb, and the Maryland Casualty Company, in solido, in the sum of seventy-five hundred ($7,500) dollars with legal interest from judicial demand until paid and for all costs.

It is further ordered that there be judgment herein in favor of Mr. Prioleau Ellis and against the defendants, Mrs. Mary Elizabeth Schlosser Kolb, Joseph H. Reising and Milton Langbehn, testamentary executors of the estate of Conrad Kolb, and the Maryland Casualty Company, in solido, in the sum of one hundred fifty-five dollars and twenty-eight cents ($155.28), with legal interest from judicial demand until paid, and all costs.

Reversed.

JANVIER, J., absent, takes no part.