NASHVILLE RAILWAY & LIGHT CO. v. SARAH WILLIAMS,
by next friend T. J. WILLIAMS.

Middle Section.  October 14, 1929.

Petition for Certiorari denied by Supreme Court, March 1, 1930.

R. F. Jackson, of Nashville, for plaintiff in error, Railway & Light Co.

Avery Handly and Joseph Martin, both of Nashville, for defendant in error, Sarah Williams.

CROWNOVER, J. This is an action brought by Sarah Williams, a minor, by her next friend, to recover damages for personal injuries caused by the explosion of a dynamite cap averred to have been negligently left by the side of the Murfreesboro Pike near her home by the defendant Railway & Light Co. The declaration contained only one count, in which it was averred that Sarah was ten years of age and picked up the cap and, being unaware of its dangerous character, touched it with a lighted match, when it exploded and caused the injuries sued for. The defendant pleaded the general issue of not guilty, and the case was tried by the court and the jury, and resulted in a verdict and judgment for $2,000 in favor of the plaintiff below.

At the close of plaintiff's evidence, and at the conclusion of all the evidence, the defendant moved for a directed verdict, which motions were overruled. The defendant's motion for a new trial was overruled, and it has appealed in error to this court and has assigned eight errors. which when summarized raise only three propositions, to the effect that the trial court erred:

(1) In overruling defendant's motion for a direct verdict, because there was no material evidence to support a verdict.

(2) In refusing to charge the jury as requested.

(3) The verdict was excessive.

The facts of the case are, that in the summer of 1926 the State Highway Commission began preparations for constructing a new concrete surface on the Murfreesboro Pike, which necessitated the widening of said Pike which caused the Railway & Light Co., and Telephone Companies to move their poles back some distance. There is considerable rock formation in that section, which necessitated blasting for some of the post holes, requiring the use of dynamite and caps.

The defendant Nashville Railway & Light Co., had poles and wires on the left side of the road, from Nashville to Murfreesboro, while the Cumberland Telephone & Telegraph Co., had poles and wires on the right side of the road, and the Lavergne Telephone Co., also had poles located on the right side. During the summer and fall of 1926 said Companies began to remove their poles, and the highway forces began the work of tearing up the pike and having the fences rebuilt along the sides of same. T. J. Williams had a combination filling station, barbecue stand and grocery store on the left side of said pike, but his residence was across the road on the right-hand side about thirteen miles from Nashville.

On August 10th, the Nashville Railroad & Light Co. placed a pole near said filling station. It was necessary to blast out the hole for the same, and that company used a metallic dynamite cap about the size of a lead pencil one and one-half inches long, that had two small wires extending from one end, so that the cap could be exploded by the use of dry cell batteries; but the other end was entirely closed. The company did not use fuse caps. On August 11, 1926, at about five o'clock in the afternoon, the plaintiff, Sarah Williams, ten years of age, granddaughter of said T. J. Williams, and who made her home with him, was sent to the filling station to wait on customers in the absence of her grandfather. As she went to the station she saw a dynamite cap lying at the base of defendant's pole near the station. She picked it up, and not knowing that it was dangerous, and thinking that it would make a noise like a fire cracker, she obtained a match and lighted it, and applied it to the cap thereby causing the cap to explode before she could throw it away, which caused painful and permanent injuries, for which she brought this suit.

We are of the opinion that none of said assignments of errors are well taken and all of them must be overruled.

■ We are of the opinion that there was sufficient circumstantial evidence for the case to be submitted to the jury on the propositions of whether the dynamite cap was defendant's and whether its employees left it on the roadside.

There was evidence that the exploded cap had two small wires extending from one end that were fastened in the cap by means of yellow cement like those used by the defendant, and resembled them. It was found at the base of defendant's pole on the left side of the pike where defendant had worked near the filling station. The hole was dug and blasted out with dynamite by the use of such caps, and said pole was placed therein by the defendant on the day before the accident, and no other person or company had blasted in that vicinity at that time.

Mr. Williams testified that he picked up near the post where the child had been a piece of an exploded cap with a yellow tip of cement on the end of the same; that he asked the man on the service wagon of defendant Railway & Light Co., to show him the caps that they used and he noticed that the wires in all of their caps were cemented in with yellow cement. The foreman of the Railway & Light Co on being asked if there was any likelihood of any cement being left on the wire after an explosion, said there was just one chance in a hundred, but sometimes some of the cement would stick to the wire.

It is claimed by the company that the caps of the Cumberland Telephone Company were like those of the Railway & Light Company, but there is proof that the Telephone Company was in that vicinity more than three weeks prior to the accident, and did no blasting at that time, and it is therefore certain that that company and its employees did not leave the cap at the base of that pole which was placed there the day before the accident. The proof shows that that hole was blasted out for the pole on the day before the accident, and if the cap had been at the place she found it the explosion of the dynamite would have exploded the cap, and the employees of the Light Company in making their careful inspection for caps would have seen the cap thus exposed.

The proof and argument of the defendant are based on two propositions, first. that the Cumberland Telephone Company, the Lavergne Telephone Company and the contractor for the State Highway Department were blasting in the same place on the highway near the filling station so that it was impossible to say what company had negligently left the cap at that place on the roadside; and second, that the cap causing the injury was different from the caps used by the defendant, in that the defendant's cap could not be exploded with a lighted match.

On the first proposition six witnesses for the defendant Railway & Light Company, employees engaged in blasting on the Murfreesboro Pike, testified that at the same time that they were blasting on the left side of the road, the Cumberland Telephone Company and Lavergne Telephone Company were blasting across the road on the right side, and that the highway forces were blasting on the pike. But three witnesses besides T. J. Williams and his wife, one of them being manager of the Lavergne Telephone Company and another a foreman of the highway forces on that pike. in effect testified that at that time, in August, 1926, the defendant Railway & Light Company was the only company blasting in that immediate neighborhood; that the Cumberland Telephone Company finished its work in that vicinity some three weeks before the accident; that the Lavergne Telephone Company did no blasting in that neighborhood and that at the time that it was moving its poles defendant company

was not working in that neighborhood; and the highway forces did not have to do any blasting in that vicinity and carried no dynamite caps with them, and that the Railway & Light Company was not working across the highway while the highway forces were at work in that vicinity. Hence, there was a sharp conflict in the evidence on these propositions, to be submitted to the jury, and the jury having accepted the plaintiff's theory, the verdict is conclusive on us.

On the second proposition the defendant insisted that the plaintiff could not have caused an explosion by putting a match to the bottom of one of their caps, therefore she must have picked up a different style of cap, a fuse cap. It is insisted for the defendant that the style of cap used by it could only be exploded by means of a dry cell battery. Evidently the jury took the other view of the matter, as it was admitted by the defendant's witnesses that these caps would corrode, disintegrate and come apart to some extent, and one of the caps which had thus disintegrated was filed as an exhibit in this cause, showing that when it corroded holes would come in the metal, and it was possible that the cap that exploded had corroded to some extent, as the plaintiff testified that she pulled out one of the small wires with her hands. The metallic case is thin and it is possible that a lighted match would explode the cap had there been no corrosion. The expert for the defendant, who had been in charge of their explosives for thirty-seven years, testified that the explosive in the cap is at the bottom or closed-up end, and when asked if a lighted match applied to the bottom of the cap might cause a spark, testified that it might explode it, and that he would not hold one in his hand and touch a match to it as it would be dangerous and foolhardy.

The defendant undertakes to show that it exercised care in handling the dynamite and caps and that when necessary to use a stick of dynamite and a cap the employee went to the bag on the service truck and took only one stick of dynamite and only one cap at a time, and that after blasting a hole they made a careful inspection to see that no caps or dynamite were left. But on cross-examination of these witnesses it was brought out that there was no system of checking the dynamite or caps, that all the men needing them indiscriminately went to the truck and took them, and that no account was kept of those taken from the truck by these men, and they did not know the number they carried out on the truck or returned after the work.

Hence it will be seen that there was enough material evidence for the case to go to the jury on these propositions.

In the case of The Woodmen of the World v. Mankin, 5 Tenn. App., 188, 198, Judge DeWitt said:

"The question is not what inference the court would draw from the facts proved, but whether the jury might reasonably determine the inference therefrom. The guiding principle for an appellate court is not what it may think the jury ought to have done, or what such court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such verdict from the evidence adduced."

"The appellate court will not set aside the verdict where it is supported by inference reasonably deducible from the facts proved; or where the evidence is such as to leave the mind in doubt; or where the evidence supporting the verdict is even weak, vague or unsatisfactory."

It is a well settled principle of law that negligence may be proved by circumstantial evidence. 45 C. J., 1261, sec. 834; 29 Cyc., 622; 20 R. C. L., 180, sec. 149; Walton & Co. v. Burchel, 121 Tenn., 715, 723-8, 121 S. W., 391; Nashville Ry. & Lt. Co. v. Harrison, 5 Tenn. App., 22.

In the case of the Nashville Ry. & Light Co. v. Harrison, supra, Judge DeWitt said:

"The verdicts in these cases rest upon circumstantial evidence, for no one saw the actual ignition of the property. However, it is well settled that negligence may be proved by circumstantial evidence." . . .

"On the other hand, inasmuch as no facts are presented indicating any other cause of the fire, it is clear that the case must be determined according to the rule that negligence may be shown by circumstantial evidence; in other words, taking the evidence most strongly tending to support the verdicts, we must simply determine whether or not it affords grounds for more than guess work or conjecture, as a basis for satisfactory conclusions by the jury. When circumstances in evidence point to a conclusion of fact in such manner as to justify the finding of such fact, it cannot be said that a jury, acting on such circumstantial evidence, and finding facts therefrom, was left to guess or speculate as to probabilities."

Negligence may be shown by circumstantial evidence, and anyone dealing with, using or handling explosives must exercise a high degree of care to prevent injury to property or persons. That care, and caution to be applied in guarding dangerous substances is a degree of care and caution proportionate to the danger to others from coming into contact with them. 1 Thompson on Negligence, sec. 759; 25 C. J., 185, sec. 8; Verran v. Town of Greeneville, 4 Tenn. App., 422; Cotton Co. v. Clements (Ariz.), 213 Pac., 1005; Crabb v. Wilkins (Wash.), 109 Pac., 807; Clark v. Powder Co.,

94 Kan., 268, 146 Pac., 320, L. R. A. 1915E. 479; Hamblin v. Gano (Miss.), 76 So., 633; Barnett v. Cliffside Mills, 167 N. C., 576, 83 S. E., 826; Powers v. Harlow (Mich.), 19 N. W., 257; Mattson v. Minnesota, etc., R. Co., 95 Minn., 477, 104 N. W., 443, 111 Am. St. Rep., 483, 70 L. R. A., 503, 5 Ann. Cas., 498; Byrnes v. Hewston, 13 Ohio App., 13, 43 A. L. R. 458; City of Victor v. Smilanich (Colo.), 131 Pac., 392; Gerber v. Boyle Const. Co. (Mo.), 263 S. W., 432; Butrick v. Snyder (Mich.), 210 N. W., 311; Wells v. Gallagher (Ala.), 39 So., 747, 3 L. R. A. (N. S.), 759; Aikin v. Eng. Co. (Wash.), 92 Pac. 903, 14 L. R. A. (N. S.), 586; Eckart v. Kiel (Minn.), 143 N. W., 122; Davis v. Wenatchee (Wash.), 149 Pac., 336.

In the case of Powers v. Harlow, supra, Chief Justice Cooley said:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them, must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

In the case of Verran v. Town of Greeneville, Judge Portrum of our court said:—

"We hold that leaving a bright dynamite cap on the bank of a ditch, after the laborers had left, was an attractive nuisance, because boys are calculated to see the bright cap and to take it and tinker with it. Its potential capacity for danger is great and is equal to its power to attract. A case of liability was made out."

"The central idea is that children are liable always to be upon the public streets, and also are liable to turn aside from traveling and play, or meddle with attractive things left thereon; that a reasonable man must bear this fact in mind, and hence may not negligently or wilfully place upon the street a dangerous trap, well calculated to arouse the admiration or curiosity of a child, and, when it has accomplished the natural result which might be reasonably expected escape the consequences by saying that the injured child should not have yielded to his curiosity. In accord are the later cases of Secard v. Lighting Co., 147 Wis., 614, 133 N. W., 45; Kelly v. Southern Wis. R. Co., 152 Wis., 328, 140 N. W., 60; 44 L. R. A. (N. S.), 487; Kessler v. Berger, 205 Pa., 289, 54 Atl., 887, 61 L. R. A., 611; Doyle v. Chattanooga, 128 Tenn., 442, 161 S. W., 997.

Hence we hold that there was sufficient evidence to support the verdict and that there was no error in overruling defendant's motion for a directed verdict.

■ It is assigned that the court erred in refusing to charge several special requests. It would make this opinion too long for us to review each request separately, but we will state that we have carefully read several times the different requests and also carefully read the court's charge to the jury, and there is no error in the court's refusal to charge these requests, as we think the court below incorporated the different propositions in the original charge. When the court has fully charged on a proposition, a special request should be refused as it will only serve to unduly emphasize the proposition; hence, the assignments of error on these propositions must be overruled.

■ The last proposition raised is that the verdict is excessive. After an examination of the record on this proposition we are of the opinion that the assignment should be overruled. The cap exploded in her left hand with much force, tearing her hand, knocking out one front tooth and injuring her mouth and face. Her left hand was badly lacerated and was so swollen that the doctor treating her thought that she would lose her hand. She lost a tooth, and the left side of her jaw was lacerated and the glands swollen as the result of infection from the wounds in her mouth, and she was given tetanus anti-toxin. The doctor treated her for three or four weeks and took out of her left hand foreign substances, either glass or stone, and pieces of bone out of her finger and thumb. The bone in her left thumb is now deficient and her left hand will never be as good as her right hand. There are scars on her thumb and fingers and face which are permanent. She suffered much pain at the time of the accident, and for several weeks thereafter, and suffered during the time of her treatment, was nervous and unable to sleep. The dentist found that her permanent left central incisor had been broken off by the explosion and the upper one-third part at the gum and the pulp (nerve) were exposed. Infection had set up and it abscessed. Her jaw bone became infected and she had a fistulous opening through her gum. Dead bone from the jaw bone had to be scraped off, and the infection had to be treated six months. The loss of her tooth is conspicuous and detrimental to her appearance. It will be necessary to use a false tooth and a small plate in order to fill in the cavity, which will have to be changed every two or three years in order to accommodate her mouth until it reaches its full growth, and then a permanent bridge will finally have to be made and it will be necessary to grind down the edges of two of her other teeth in order to place a permanent bridge; hence, we are of the opinion that the verdict is not excessive.

"In a personal injury case, such as we are now considering, the law furnishes no standard by which to measure the compensation to which a successful plaintiff is entitled, but confides the amount of the damages to be awarded to the judgment of impartial jurors, guided by the facts and circumstances of the particular case. Then, before the case comes to this court, the verdict is subject to the scrutiny of the trial judge. As said in the case of Quinn v. Railway Co. (Minn.), 46 A. L. R. 1228: 'In determining whether a verdict is so excessive that a new trial should be granted, much responsibility rests on the trial judge. He is called upon to exercise a practical and sound discretion. This court does not readily substitute its judgment for his, for he is in a far better position to come to the right conclusion than we are. Properly enough, we defer to his judgment and do not interfere, unless it is fairly evident that he failed to keep the jury within the bounds of reason and common sense.' " Power Packing Co. v. Borum, 8 Tenn. App., 162, 180.

It results that all of the assignments of error must be overruled and the judgment of the lower court affirmed. A judgment will be entered here in favor of the defendant in error, Sarah Williams, and against plaintiff in error, Nashville Railway & Light Company, for $2000 and interest thereon from November 15, 1927, together with the costs of the cause including costs of this appeal, for all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.