LAWRENCE *et ux. v.* KING.

(Two cases)

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

LAWRENCE & LAWRENCE of Knoxville, for plaintiffs in error.

BOYCE GRIFFITH, of Jacksboro, and JENKINS & JENKINS, of Knoxville, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

These are two suits brought by father and son in the circuit court of Knox County and were consolidated and tried together, resulting in a judgment for the son, eleven

years of age, for $2500 and a judgment for the father in the sum of $500. The Court of Appeals affirmed the judgments. We have heretofore granted *certiorari* and the cases have been argued.

The declaration alleges, and the proof tends to show, that Eugene King was an infant about eleven years of age in 1943, and that he, his father and mother moved on the farm of the defendants, J. T. Lawrence and wife, who own the land as tenants by the entirety, after one Hines had moved off. The Kings set up their domicile on the defendants' farm in January, 1943.

It appears from the proof that the defendants left some dynamite caps in a tool house on the farm accessible to the child, Eugene King, and that the defendants left the tool house unlocked and failed to give warning of the presence of the dangerous explosives in the tool house.

It further appears that Eugene King went into this tool house and found some dynamite caps in a small box under a workbench on March 27, 1943, and carried some of the dynamite caps in his pocket for several days; that on April 10, 1943, he took one of these caps out of his pocket while on the porch of his home, where he was melting some lead, and it came in contact with the hot lead and exploded, causing the loss of one thumb and one eye.

It is also shown by the proof that the defendant, J. T. Lawrence, knew of the presence of these caps in his tool house and he failed to warn the child of their presence; but Lawrence claims that he gave the caps to Hines when the latter was in the act of moving off the defendants' land and he thought Hines had taken the caps with him.

The defendants insist that the plaintiff, Eugene King, was about fifteen years of age instead of eleven and should be held accountable for his acts; and, also, that

the defendant, J. T. Lawrence, had denuded himself of further responsibility in the matter when he had given the caps to Hines.

█ We think there is material evidence in the record to show that the plaintiff, Eugene King, was only about eleven years of age and could not, therefore, be charged with knowledge of the dangerous character of the caps.

It is insisted on behalf of defendants that if they were guilty of any negligence in having these caps in the box under the workbench, such negligence would be only the remote cause of the injuries to the plaintiff, Eugene King; that the acts of the child in going into the tool shop where he had no business or employment and his unauthorized and reckless taking of the caps from the box, were the proximate cause of his injuries; that the infant's own acts and conduct broke any causal connection between any negligence that could be attributed to defendants in the matter and the injuries he negligently inflicted upon himself by reason of his unlawful and wrongful conduct.

Counsel for defendants state in their brief that they have been unable to find any Tennessee cases in point on the facts of the cases under consideration. It is argued by counsel for defendants that the doctrine of attractive nuisance has no application here.

In *Nashville Ry. & Lt. Co.* v. *Williams*, 11 Tenn. App. 1, a child ten years old found a bright dynamite cap at the foot of a telephone pole. The cap had been left by the defendant on the ground where it had blasted out a hole for a telephone pole. The little girl was attracted to the cap by its shiny color. She had reason to believe that the cap had been abandond or thrown away and her act in taking it was not unlawful. She did not have to search for

it and go into the private possession of the defendant in order to obtain the dangerous article.

In *Verran* v. *Town of Greeneville,* 4 Tenn. App. 422, it appeared that a boy twelve years of age found a shiny exposed dynamite cap on a bank of dirt. The cap had been left by workmen on the bank where they had been digging a sewer. This boy was returning from school along the street when he was attracted by the cap on the bank. There was nothing wrong in picking up this cap under the circumstances.

Cases too numerous to cite establish the general rule that, owing to the dangerous nature of explosives, especially in the hands of young children, one who keeps or uses explosives must exercise a high degree of care to prevent injury to children who may have access to or come in contact with the same, the degree of care being commensurate with the dangerous nature of the object and the child's appreciation of the danger of handling explosives. See annotations in 43 A. L. R., 435, and 22 Am. Jur., Explosions and Explosives, sec. 19. An analysis of the cases annotated shows that, with respect to dynamite caps, the courts have exacted "the highest degree of care," "such care as might reasonably be expected of a person of ordinary prudence under the circumstances," "utmost caution," and have used other expressions of similar import to measure the degree of care required.

In the instant cases it is conceded by the Court of Appeals that the owner of a farm is not necessrily negligent in having explosives for a lawful purpose, and that there must be some negligence shown in storing or keeping such explosives even where the owner knows that children reside and play on the premises; but where one stores explosives in a place on his premises, which he knows is accessible to children, he must exercise a high

degree of care and take effective measures to prevent injury to such children. In the opinion of the Court of Appeals it is said:

"*Powers* v. *Harlow*, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154, also involves the liability of a farm owner for injuries to the son of a tenant resulting from the explosion of dynamite caps found by the boy in a partially enclosed shed on the farm about which he was loitering. It was held that a verdict directed for defendant could not be sustained on the ground that the child was a trespasser. The court said that the invitation to the tenant to come upon the land was an invitation which embraced his family; that the moving about of children upon the land, while not actually employed, was incident to their being there; and that children, wherever they go, must be expected to act on childish instincts and impulses upon which others chargeable with a duty of care and caution toward them must calculate and take precautions accordingly; that the structure and location of the shed was such as naturally to invite the entrance of children who were rightfully near it. See also as involving the relationship of tenancy *Bryan* v. *Stewart*, 194 Ala. 353, 70 So. 123.

■ "But, whatever the relationship of the parties, liability depends upon the accessibility to children of the place of storage and not necessarily upon the doctrine of attractive nuisance. No liability arises where proper care has been exercised or the explosives left where there was no reason to anticipate meddling. 35 C. J. S. [Explosives, Sec. 5] 231."

■■ The proof shows that this young boy went inside the workshop and there discovered under the workbench a closed box; that he raised the lid on the box and procured a small pasteboard container containing dyna-

mite caps. We cannot see how this box so placed could do any harm or how it could be anticipated that a child would meddle with it. Here, in order for the boy to obtain the caps, it was necessary for him to go into the private possessions of the defendants to obtain the dangerous explosives, as they were stored away in a box in the workshop of defendants and not exposed to view. We have no disposition to go that far in so holding, as the record discloses that Mr. Lawrence exercised proper care in storing the explosives. Nor do we think the failure of defendants to see that Hines removed the caps would fix liability on them.

It results that the judgments of the Court of Appeals are reversed and the suits dismissed.