THOMAS HERMAN TAYLOE, BY HIS NEXT FRIEND, CARROLL H. MAT-
THEWS, v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COM-
PANY AND Z. A. SNEEDEN'S SONS, INC.

AND

THOMAS E. TAYLOE v. SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY AND Z. A. SNEEDEN'S SONS, INC.

(Filed 27 February 1963.)

1. **Negligence § 4—**

The highest degree of care, commensurate with its inherent danger,
is required of persons having possession and control of dynamite, and it
is negligence to leave a dynamite cap where either a child or unversed
adult can pick it up and cause it to explode. G.S. 14-284.1(c),(d).

2. **Trial § 20—**

When defendant introduces evidence he waives his motion to nonsuit
made at the close of plaintiffs' evidence.

3. **Trial § 21—**

On motion to nonsuit, defendant's evidence may be considered only if it
tends to explain plaintiffs' evidence and is not in conflict with it.

4. **Trial § 22—**

Evidence which raises no more than a possibility or conjecture of the
fact in issue is insufficient to be submitted to the jury, but if an affirmative
finding is a more reasonable probability on the evidence, motion to non-
suit should be denied.

5. **Negligence § 24a— Evidence held insufficient to connect defendant
with dynamite cap found by minor in trash pile.**

The minor plaintiff, a 15 year old boy, was injured when a dynamite
cap, which he had found near a telephone pole near the intersection of
a highway and a rural road in a farming area some four miles from a
municipality, exploded as he was attempting to dig out its white contents
with a needle. The evidence favorable to plaintiffs tended to show that
defendant had used dynamite in excavating to replace a smaller tele-
phone pole with a larger one some 800 feet from the *locus,* and defendant's
evidence tended to show that the cap causing the injury was a fuse cap,
that defendant used only electric caps, that none of defendant's em-
ployees were ever at the telephone pole where plaintiff found the fuse cap.
The evidence further tended to show that the minor plaintiff found the
cap in the trash in the vicinity of the telephone pole, that the pole was
in an unfenced, level clearing with automobile tire ruts leading from
the highway, and that considerable blasting was done at a rock quarry
some quarter of a mile distant. *Held:* The evidence raises a mere con-
jecture as to whether defendant ever had possession or control of the
dynamite cap which injured the minor plaintiff, and nonsuit should have
been sustained.

APPEAL by defendant from *Gwyn, J.,* March 19, 1962 Term of FOR-
SYTH. This appeal was docketed in the Supreme Court as Case No. 381
and argued at the Fall Term 1962.

These two civil actions, instituted by a minor son and his father
against the defendants, Southern Bell Telephone and Telegraph Com-
pany and Z. A. Sneeden's Sons, Inc., contractors, were consolidated
for trial. In one, the minor, Herman Tayloe, seeks to recover for per-
sonal injuries allegedly caused by the negligence of both defendants;
in the other, the father seeks to recover for loss of his son's services
and earnings and for medical expenses necessitated by his injury. De-
fendants' motions for judgment as of nonsuit at the close of plaintiffs'
evidence and at the close of all the evidence were overruled. The jury
exonerated the Telephone Company and awarded damages in both
cases against Sneeden's. From judgments entered on the verdict, only
Sneeden's appealed. The crucial question is one of nonsuit. The facts
are stated in the opinion.

*White and Crumpler, Leslie G. Frye and Harrell Powell, Jr., for
plaintiff appellees.*

*Hudson, Ferrell, Petree, Stockton, Stockton and Robinson by R. M.
Stockton, Jr., and W. F. Maready for defendant appellant.*

SHARP J.   Herman Tayloe, the minor plaintiff, was injured on May
8, 1960 when a dynamite cap he had found near a telephone pole
exploded in his hand. A description of the terrain adjacent to the
pole, as it was in May 1960, is necessary to an understanding of the
case.

Ebert Street Extension is a paved highway which runs southwardly
from Winston-Salem. Fraternity Church Road runs generally east and
west between U. S. No. 158 and Ebert Street Extension. Approximately
four miles from Winston-Salem, in a farming area, Fraternity Church
Road intersects Ebert Street Extension from the west to form a T
intersection. Immediately north of the intersection both sides of Ebert
Street Extension are wooded; immediately south of the intersection
both sides are open fields. A line of the defendant Telephone Company
runs from Winston-Salem along the west side of Ebert Street Exten-
sion to form a corner on the northwest side of its intersection with
Fraternity Church Road.

A telephone pole (designated in the evidence as pole No. 1) is lo-
cated ten to twenty feet from the northwest corner of the intersection
on the right-of-way. Around this pole is a small, unfenced, level clear-
ing into which an automobile could be driven. Ruts lead to the guy

wire supporting the pole. Tin cans, bottles, pieces of guy wire, one or two broken insulators, and debris of various kinds were scattered in the area. Farther down from the pole was a trash pile where assorted litter had been dumped. Boys played in this area, especially in the summertime. From pole No. 1, the telephone line runs westwardly with the Church Road for a short distance and then veers northwestwardly into a field to pole No. 6. The residence of the plaintiffs is on the south side of Church Road approximately two-tenths of a mile from the intersection. Between the Tayloe home and the intersection are several other homes on the south side of the Church Road but none on the north. There is a residence on the west side of Ebert Street Extension one to two hundred yards south of the intersection. The area in the neighborhood is rocky, and rocks occasionally protrude above the ground. On the north side of the road, about a quarter of a mile west of the residence of the plaintiffs, is the large rock quarry of W.E. Graham & Sons. Considerable blasting is done at the quarry which uses only electric caps and stores no dynamite. Trucks delivering dynamite on the day it is used enter the Church Road from Ebert Street Extension.

On May 8, 1960, Herman was fifteen years old, in the seventh grade at school, and employed as a laborer for a landscaping company. On the afternoon of May 8th, he rode his bicycle to the intersection of Ebert Street Extension and the Church Road and into the clearing around pole No. 1. He investigated the trash in the vicinity. On the edge of the wire and glass debris, he found a clean white box about one inch deep and two and a half to three inches long. There was no writing, weather stains, or dirt on the box. The bottom slipped out from the top, and inside he found a tarnished brass tube about the size of a pencil and about two and a half inches long. One end was closed; the other open, revealing white, cotton-looking material inside the cylinder. No wires were attached to the tube and it had no ring or crimp around the top. It was a fuse-type dynamite cap but Herman, who had seen sticks of dynamite, had never before seen a cap and did not know what it was. He took the box home, went down to the basement, and attempted to dig out the white contents of the tube with a needle, When he did, the cap exploded. He lost a part of two fingers on his right hand and sustained other less serious injuries.

To discard or leave a dynamite cap where either a child or an unversed adult might pick it up and cause it to explode is positive negligence. Both the common law and the statutes of North Carolina require persons having possession and control of dynamite to use the highest degree of care to keep the explosive safe and secure and to

guard others against injury from it. Only the highest degree of care is commensurate with the dangerous nature of dynamite. *Barnett v. Mills,* 167 N.C. 576, 83 S.E. 826; G.S. 14-284.1 (c) and (d).

The decisive question on this appeal is whether there is any evidence to connect the defendant Sneeden's with the dynamite cap which injured Herman Tayloe.

The question of nonsuit must be answered upon a consideration of all the evidence which tends to support plaintiffs' case. Defendant, having introduced evidence after the denial of his motion made at the close of plaintiffs' evidence, waived its exception to the refusal of that motion. Defendants' evidence may be considered only if it tends to explain plaintiffs' evidence and is not in conflict with it. Strong, N. C. Index, Trial, Sections 20 and 21.

The answer of the defendants discloses that sometime prior to May 8, 1960, under a contract with the Telephone Company, Sneeden's sank holes in the ground and erected telephone poles in the vicinity of the intersection of Ebert Street Extension and Fraternity Church Road. Both defendants denied ownership and responsibility for the cap which plaintiff found at pole No. 1.

The plaintiffs' evidence tended to show that during the week preceding Herman's injury "some men" were blasting in a field about 800 feet from the intersection where one telephone pole was removed and a larger one put in. Two blasts were set off about one hour apart. Thereafter, men then took down the telephone wire from the old pole and replaced it with a heavy cable on the new pole.

The preceding statement contains the substance of plaintiffs' evidence with reference to the use of dynamite by Sneeden's in the vicinity of the intersection.

The defendants' evidence tended to show the following facts:

During the week prior to May 8, 1960, Sneeden's, a Greensboro firm, was engaged in replacing some of the telephone poles on the Fraternity Church Road with larger ones, but the contract did not call for any work within 1,450 feet of the intersection. Pole No. 1 at the intersection and poles Nos. 2, 3, and 4 were not replaced. None of Sneeden's employees were ever at pole No. 1. Poles Nos. 5 and 6 were replaced, but dynamite was used only at pole No. 6 which was estimated to be about 1,500 feet from the intersection. On May 3, 1960, Sneeden's crew of three men took two electric caps to the site of pole No. 6 and used them to set off two blasts for a hole to replace that pole. For fifteen years Sneeden's had used only electric caps and its employees had no other kind. It purchased its dynamite and blasting caps from Southside Hardware in Greensboro, the only place where

such supplies could be obtained there. The records of the Southside Hardware, examined from 1957, showed that Sneeden's had purchased only electric caps. These caps came in a yellow box about eight inches long and four inches wide with printing on it. Electric caps have a little crimp around the top of the cylinder to which is attached wires from six to twelve feet in length. The fuse-type cap is smooth and without wires, and is detonated by igniting the fuse; an electric cap is set off by a battery or some other electrical connection.

Sneeden's crew worked from specifications furnished by the Telephone Company but its employees were not present while Sneeden's did its work. After Sneeden's had installed the new poles and anchors, a telephone crew put up the guy wires, took down the old line, and replaced it with a cable. Sneeden's did not handle any insulators or wire, but it removed the old pole after the Telephone Company had taken the wire from it. When Sneeden's finished its work on Fraternity Church Road it left no dynamite caps in the area. The Telephone Company has not used any explosives for twenty-two years.

"To hold a defendant liable for injury caused by dynamite there must be evidence, direct or circumstantial, sufficient to support a finding that it was his property, or property he had abandoned. . .; otherwise, the verdict is a mere guess, which cannot be permitted." *Long v. Frock*, 304 Pa. 355, 156 A 88. If the evidence does no more than raise a possibility or conjecture of a fact, a motion for a judgment of nonsuit should be allowed, but if the more reasonable probability is in favor of the plaintiffs' contention the question ought to be submitted to the jury. *Jenkins v. Electric Co.*, 254 N.C. 553, 119 S.E. 2d 767.

The record in this case contains no evidence that employees of Sneeden's were ever closer than 800 feet to pole No. 1 where Herman Tayloe picked up the cap. However, it does contain positive evidence that they were never there. The clearing in which pole No. 1 stood adjoins a paved public road and was therefore easily accessible to the general public. Ruts made by automobiles going into it led to a trash pile in which tin cans, bottles, and pieces of old automobiles had been discarded in addition to pieces of guy wire and broken insulators. The cap which Herman picked up in this area was a fuse type. There was no evidence that Sneeden's had ever used fuse caps; there was positive evidence that for the past fifteen years it had used only electric caps. The box which contained the fuse cap was white and clean. The electric caps which Sneeden's used came in yellow boxes with printing on the outside.

Who left the cap which Herman found at the pole? Was it a Sneeden's employee, a quarry truck, a telephone linesman, a farmer in

the vicinity, a road crew, or a criminal operator passing by on the highway? The evidence does not give us the answer. One guess is as good as another, and speculation is limited only by the wingspread of one's fancy. The evidence is as consistent with the absence of negligence on the part of Sneeden's employees as it is with its existence. The record contains no evidence which directly, or by reasonable inference from established facts, connects Sneeden's with the deposit of this fuse cap at the base of the telephone pole in the clearing adjacent to the highway.

Plaintiffs rely on *Barnett v. Mills, supra,* which is easily distinguishable from the case at hand. In *Barnett,* defendant was in the process of digging a well fifteen or twenty steps from the post office at Cliffside when the minor plaintiff picked up the dynamite cap from a whole box of caps inside the well. He was later injured when he exploded it with a hammer.

Injuries resulting to children from discarded or carelessly guarded dynamite caps are numerous. We have examined all such cases cited by the plaintiff from other jurisdictions. In each there was evidence that defendant had done work or stored supplies at the site where the cap which caused injury was found.

In the instant case we hold that the evidence is insufficient to support the verdict and that the motions for nonsuit should have been allowed. The record discloses that after verdict the very able judge who tried this case came to the conclusion that the motions for nonsuit should have been allowed. However, he was then powerless to grant the motion under the rule in this State which forbids dismissal of an action after verdict by judgment as of nonsuit for insufficiency of evidence. *Ward v. Cruse,* 234 N.C. 388, 67 S.E. 2d 257; *Temple v. Temple,* 246 N.C. 334, 98 S.E. 2d 314.

Reversed.