Rick CHRISTIANS, a minor, by his guardian ad litem, Howard A. Davis, and Geraldine Hammer, Plaintiffs-Respondents,

Philip CHRISTIANS, Plaintiff,

v.

HOMESTAKE ENTERPRISES, LTD., and Royal Globe Insurance Co., Defendants-Appellants,

Merlin GREEN, Brent Stange, Wisconsin Farmers Mutual Ins. Co., and Michael Gossfeld, Defendants.†

Court of Appeals

*No. 79-852. Submitted on briefs January 30, 1980.—Decided May 20, 1980.*
(Also reported in 294 N.W.2d 534.)

† Petition for review granted.

For the appellant the cause was submitted on the briefs of *James C. Herrick, Jr.* and *Herrick Law Office, S.C.,* of Fond du Lac.

For the respondent the cause was submitted on the brief of *William M. Cannon* and *Habush, Habush & Davis, S.C.,* of Milwaukee.

Before Donlin, P.J., Foley, J., and Dean, J.

FOLEY, J.   Rick Christians was injured in an explosion involving blasting caps stolen by two other boys from property owned by Homestake Enterprises, Ltd. Because the theft involved a trespass by children, the trial court instructed the jury on the attractive nuisance doctrine. Although we agree with Homestake that the attractive nuisance doctrine does not apply to the facts here, we conclude that Homestake was not prejudiced by the instruction. The court's instructions reasonably informed the jury of Homestake's duty as a possessor of land, and the jury's finding of negligence is supported by credible evidence. Homestake has raised additional issues but none provides a basis for setting aside the judgment.

Homestake owned certain property, which it rented to Merlin Green. The rental agreement was terminated when Homestake evicted Green. Although evicted, Green did not take all of his personal property with him leaving, among other things, a box of blasting caps. Homestake did not carefully inspect the property after Green's eviction and had no actual knowledge that blasting caps were on the property. Two young boys, ages fourteen and eleven, trespassed on the property and stole the caps.

After taking the caps, the boys left Homestake's property and met Christians, who was fifteen years old at the time. The boys built a fire and the fourteen-year-old threw the caps into the fire. All three boys scattered, but

no explosion occurred. About fifteen minutes later, Christians went over to the fire to build it up, and at that point the caps exploded causing severe injury to his right hand. Christians testified at trial that he felt it was safe to approach the fire because he believed that if the blasting caps were going to explode, they would have already done so.

We agree with Homestake that the doctrine of attractive nuisance is inapplicable to these facts. The doctrine of attractive nuisance arose originally as a method of avoiding the harsh result caused by the traditional immunity granted to the owners or occupiers of land for injuries to trespassers. Where the plaintiff is not a trespasser but rather is injured when someone else removes a dangerous instrumentality from the defendant's land, we are not concerned with the duty owed to a trespasser. There is, therefore, no need to avoid the immunity through application of the doctrine of attractive nuisance. James, *Tort Liability of Occupiers of Land: Duties Owed to Trespassers*, 63 Yale L.J. 144 (1953).

Homestake instead owed Christians the same duty that any owner of land owes a nontrespasser. This duty is to exercise ordinary care and is breached if Homestake's conduct foreseeably created an unreasonable risk of harm. *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 288 N.W. 2d 95 (1980). The conduct complained of here is Homestake's failure to inspect its property after it regained possession from Green. A careful inspection of the property would have disclosed the existence of the blasting caps. Had Homestake found the caps, it could have stored them in such a way to prevent easy theft by trespassing children. Had the theft not occurred, Christians would not have been injured.

The first question to be considered is whether Homestake had a duty to inspect its property because without

this duty, knowledge of the caps could not be imputed to Homestake. Given the facts known to Homestake, we conclude that it is not unreasonable to hold that Homestake had a duty to inspect. There was testimony that children regularly trespassed on Homestake's property. There was also testimony that Homestake knew that Green had not removed a great deal of personal property, perhaps best characterized as junk. Green asked to remove his property, but Homestake would not allow him to do so. For all Homestake knew, a dangerous condition could have existed even in the absence of the acts that occurred here. Homestake cannot, under these circumstances, escape liability simply by failing to inspect its property.

It is clear that a careful inspection of the property would have disclosed the presence of the blasting caps. Upon recognition of a duty to inspect, the question is therefore whether Homestake was negligent in failing to properly remove or store the caps. It is widely recognized that where blasting caps or some other highly dangerous instrumentality is involved, a landowner must exercise a high degree of care in their use or storage. *McGettigan v. National Bank of Washington*, 320 F.2d 703 (D.C. Cir. 1963) ; *E. I. du Pont de Nemours & Company v. Edgerton*, 231 F.2d 430 (8th Cir. 1956) ; *Luhman v. Hoover*, 100 F.2d 127 (6th Cir. 1938) ; *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958) ; *Reynolds v. Salmonson*, 148 Cal. App.2d 895, 307 P.2d 672 (1957) ; *Parzych v. Town of Branford*, 20 Conn. Supp. 378, 136 A.2d 223 (1957) ; *Vills v. City of Cloquet*, 138 N.W. 33 (Minn. 1912) ; *Stevens v. Missouri Pacific Railroad Company*, 355 S.W.2d 122 (Mo. 1962) ; *Boyer v. Guidicy Marble, Terrazzo & Tile Co.*, 246 S.W.2d 742 (Mo. 1952) ; *Tayloe v. Southern Bell Telephone and Telegraph Co.*, 258 N.C. 766, 129 S.E.2d 512 (1963) ; *Lone Star Gas Co. v. Par-*

*sons,* 159 Okla. 52, 14 P.2d 369 (1932) ; *Fehrs v. City of McKeesport,* 178 A. 380 (Pa. 1935) ; *Lawrence v. King,* 184 Tenn. 151, 197 S.W.2d 548 (1946) ; *Dezendorf Marble Company v. Gartman,* 161 Tex. 535, 343 S.W.2d 441 (1961) ; *Winter v. Unaitis,* 124 Vt. 249, 204 A.2d 115 (1964). This higher degree of care is required because the risk of harm is greater and the likelihood of harm more foreseeable when an inherently dangerous instrumentality is involved.

Considering that Homestake knew or should have known that children played on its property and would therefore have had easy access to the dangerous blasting caps, a jury could well find that Homestake's failure to take any steps to discover and secure the caps foreseeably created an unreasonable risk of harm. The jury, therefore, could and did find that Homestake was negligent.

Even if negligence is found, however, Homestake contends that the negligence was not causal because the intervening act of the two boys in stealing the caps was the real cause of the accident. The determination of whether an intervening act constitutes a superseding cause is a question of law. *United States Fidelity & Guaranty Co. v. Frantl Industries, Inc.,* 72 Wis.2d 478, 241 N.W.2d 421 (1976).

Whether an intervening act constitutes a superseding cause depends on whether the intervening act is one that the actor could have reasonably anticipated in the course of ordinary human experience and should have guarded against. *Stewart v. Wulf,* 85 Wis.2d 461, 271 N.W.2d 79 (1978). As we have already stated, it was reasonable to decide, as the jury apparently did here, that Homestake could have anticipated the intervention of the boys. In fact, had Homestake not negligently allowed the caps to remain on its property, the boys could not have stolen

them. The intervening act is interwoven with and indeed arises from the original negligence. *See* RESTATEMENT (SECOND) OF TORTS §§443, 449 (1965). We conclude that the intervening theft of the caps is not a superseding cause so as to relieve Homestake of liability.

Homestake argues that even if its negligence is found to be a cause of Christians' injury, it should, as a matter of public policy, be relieved of legal responsibility. Homestake contends that public policy should preclude recovery in this case based on the six factors enumerated in *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 247 N.W. 2d 132 (1976). The Wisconsin Supreme Court has said: "The cases in which a causally negligent tort-feasor has been relieved of liability are infrequent and present unusual and extreme considerations." *Stewart, supra,* at 479, 271 N.W.2d at 88. No unusual or extreme considerations have been presented here.

In a case where a defendant is to be relieved of liability on public policy grounds, the question is whether the defendant should be liable for the particular harm done to the particular plaintiff. A defendant is relieved from liability because it would be unjust to expect the particular defendant to assume responsibility for the act done or because it would be unjust to allow recovery for the type of accident involved. *Stewart, supra.* Conversely, the issue in this case is one of who is more negligent in causing the accident: Homestake, Christians, Green, or the boys who stole the caps. The injury that occurred here is of the type that can be expected to occur when blasting caps are left unguarded in an area where children play. It is not particularly shocking that a careless possessor of property, who makes no effort to secure a dangerous instrumentality on property where children are known to trespass, should be held liable when a careless child is injured by the instrumentality.

Homestake also argues that the jury verdict is against the great weight and clear preponderance of the evidence

and must be reversed. The finding of negligence and the apportionment of negligence are matters left to the jury. *Morgan v. Pennsylvania General Insurance Company,* 87 Wis.2d 723, 275 N.W.2d 660 (1979). Jury findings will be upheld if there is any credible evidence to support them. *May v. Skelley Oil Company,* 83 Wis.2d 30, 264 N.W.2d 574 (1978). Furthermore, it is the jury's duty to determine the credibility of witnesses and to weigh the evidence, and we must accept reasonable inferences drawn by the jury. *Bank of Sun Prairie v. Opstein,* 86 Wis.2d 669, 273 N.W.2d 279 (1979).

Our review of the record indicates that there is credible evidence to support the verdict. There was testimony that Homestake knew Green had not taken all of his personal property with him when he was evicted, yet Homestake failed to adequately inspect the property. There was also evidence that children regularly played on the property, and there was a plainly visible minibike trail over the property. Given these facts, it was not unreasonable for a jury to find Homestake 55% causally negligent. Considering that Green specifically asked for but was denied the right to reenter the property to remove his personal property prior to the accident, the jury was justified in only finding him 33% negligent. Finally, the jury obviously chose to believe Christians' testimony that he did not really understand the danger involved. Apportioning only 2% of the negligence to Christians was, therefore, not unreasonable. The remaining 10% of the negligence was apportioned to the two trespassing boys.

Homestake raises four additional issues: (1) it is entitled to a new trial because it was prejudiced by the attractive nuisance instruction, Wis JI—Civil 1011 (1974); (2) it was relieved of any duty to Christians because of sec. 29.68, Stats.; (3) the damages were excessive; (4) it is entitled to a reduction for the percentage of causal negligence attributable to Green.

In view of our decision that attractive nuisance does not apply to the facts of this case, we agree that the instruction, Wis JI—Civil 1011 (1974), as given, was not entirely appropriate. This error, however, was harmless since Homestake was not prejudiced by the instruction. In order for an erroneous instruction to be held prejudicial, there must be a probability, not a mere possibility, that the jury was misled. *Fleury v. Wentorf,* 82 Wis.2d 105, 262 N.W.2d 68 (1978). Where the erroneous instruction does not affect the substantial rights of a party, it does not constitute prejudicial error. *Polsky v. Levine,* 73 Wis.2d 547, 243 N.W.2d 503 (1976).

The instruction, as given by the trial court, adequately apprised the jury of the duty owed by Homestake. The jury was told that blasting caps are inherently dangerous and that children may sometimes not appreciate the full risk they involve. The jury was also told that if Homestake knew that children played on its property, it had a duty to keep the property free from artificial conditions, such as blasting caps, that created an unreasonable risk of harm. The instruction also adequately covered the issues of notice of the presence of the children and of the blasting caps. Homestake's duty was properly stated to require the exercise of ordinary care to discover and to correct any dangerous condition involving unreasonable, foreseeable risk of harm.

The balance of the attractive nuisance instruction merely qualified the right of trespassers to the benefit of the attractive nuisance doctrine. It advised the jury that although the children lacked adult experience and judgment, Homestake was to be relieved of any duty if the children should have known of the danger involved. This is actually a more favorable instruction than Homestake was entitled to because Homestake's duty to the trespassing children does not determine its duty to Chris-

tians. The instruction did not therefore affect Homestake's substantial rights and does not constitute reversible, prejudicial error.

Homestake also cannot escape liability on the basis of sec. 29.68, Stats. Section 29.68 was enacted to limit liability of landowners who open their land to the public for certain recreational uses. *Goodson v. City of Racine*, 61 Wis.2d 554, 213 N.W.2d 16 (1973). This statute does not apply to the facts of this case. Homestake never opened its property for recreational use. Indeed, its property was posted to forbid such use. Additionally, Christians himself did not go on the property at the time of the accident for any purpose.

With respect to the damages, they are largely within the discretion of the jury, and we will not substitute our judgment for theirs. *Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672 (1977). An award of damages will be sustained if there is any credible evidence to support it, *Lutz v. Shelby Mutual Insurance Company*, 70 Wis.2d 743, 235 N.W.2d 426 (1975), and we must consider the evidence that is most favorable to the award in an effort to sustain it. *Lopez v. Prestige Casualty Company*, 53 Wis.2d 25, 191 N.W.2d 908 (1971). Finally, if the trial court has sustained the award over a claim of excessiveness, the issue before us is whether the trial court abused its discretion in determining that the award was supported by credible evidence. *Koele v. Radue*, 81 Wis. 2d 583, 260 N.W.2d 766 (1978).

In this case, the jury awarded $100,000 to Christians, who lost portions of three fingers of his right hand. In addition to the obvious lack of dexterity and natural embarrassment that results from such an injury, Christians experiences soreness and bleeding of the hand in cold weather. He has pain when he bumps his injured fin-

gers. He testified that he has suffered a considerable amount of both physical pain and mental anguish as a result of the accident. We cannot say that the trial court abused its discretion in affirming the award of damages.

The remaining question is whether Homestake should be entitled to a reduction in the amount it owes Christians for the percentage of Green's negligence. This is simply not the law in Wisconsin. All tortfeasors are jointly and severally liable for the entire damage award. *Chart v. General Motors Corp.*, 80 Wis.2d 91, 258 N.W. 2d 680 (1977). This is not altered by Christians' voluntary dismissal of his action against Green as opposed to his releasing Green from liability. Regardless of whether Green is solvent, Christians did not deprive Homestake of its right of contribution.

*By the Court.*—Judgment affirmed.